Iron City Industrial Cleaning Corp. v. Commissioner. Herman Fineberg v. Commissioner. Meyer Fineberg v. Commissioner. Cecil Rudin v. Commissioner. Jennie Leavitte v. Commissioner.
Iron City Indus. Cleaning Corp. v. Commissioner
Docket Nos. 10417, 11242, 11243, 11244, 11245.
United States Tax Court
1947 Tax Ct. Memo LEXIS 40; 6 T.C.M. (CCH) 1237; T.C.M. (RIA) 47305; November 12, 1947
Leonard Shapiro, Esq., 1105 Grant Bldg., Pittsburgh, Pa., for the petitioners. Stanley W. Herzfeld, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings, respondent determined the following deficiencies against the Iron City Industrial Cleaning Corporation, petitioner in Docket No. 10417: Declared Value
Excess-
Excess-Profits
Profits
Income Tax
Tax
Tax
1941
$ 997.72
1942
687.90
$ 606.10
$ 2,484.88
1943
1,211.11
61.48
The deficiencies determined against the individual petitioners are in income tax for the year 1940, in the following amounts: Docket No.
Petitioner
Deficiency
11242
Herman Fineberg
$12,150.18
11243
Meyer Fineberg
5,143.07
11244
Cecil Rudin
6,674.03
11245
Jennie Leavitte
5,908.45
*41 The principal issue results from respondent's disallowance for each of the years 1941, 1942, and 1943 of the sum of $4,800 out of a claimed deduction by the corporate petitioner of $9,000, as being excessive rental on business property, leased by the corporation from its stockholders immediately after the transfer of the property in 1940 from the corporation to the stockholders. Respondent contends the excess rental represents disguised distributions of profits. Respondent's determination of deficiencies against the individual petitioners is in the alternative. He contends that if the fair rental value of the property is $9,000 per year, as deducted by the corporation, the fair market value of the transferred property in 1940 was $150,000, and any excess over consideration for the transfer was gross income to each of the petitioners, and since the pro rata share to each would be in excess of 25 per cent of the amount stated in each tax return, the 1940 deficiencies are not barred, pursuant to Internal Revenue Code, section 275(c). Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Iron City *42 Industrial Cleaning Corporation, hereinafter sometimes referred to as the corporation, was organized under the laws of Pennsylvania in 1929 for the purpose of engaging in the business of cleaning industrial uniforms. Its tax returns for the years involved, prepared on an accrual-calendar year basis, were filed with the collector for the twenty-third district of Pennsylvania. The corporation's officers and stockholders were the four individual petitioners who held the following offices and owned the following shares of stock: Stock Held
Common
Preferred
Herman Fineberg, Pres.
18 shares
Jennie Leavitte, Vice Pres.
(Herman's aunt)
15 shares
20 shares
Cecil Rudin, Treasurer
(Herman's father-in-law)
15 shares
Meyer Fineberg, Secretary
(Herman's brother)
12 shares
Total stock issued and out-
standing
60 shares
20 shares
In 1937 the corporation purchased from the Fidelity Trust Company, for $50,000, a building located at 4460 Frankstown Avenue, Pittsburgh. It has conducted its business there since acquisition. This purchase was consummated on July 1, 1937, at which time $5,000 was paid in cash, and a mortgage of $45,000, bearing interest at *43 6 percent, was given. The property has a total area of 15,000 square feet, with a two-story brick building in the front, 100 feet wide and 50 feet deep, containing approximately 10,000 square feet of floor space, and a one-story concrete and tile building in the rear, 100 feet in width, and 40 feet in depth, containing approximately 4,000 square feet of floor space, and with an areaway of approximately 1,000 square feet between the two buildings. The buildings establishment and the utilization by the corporation gave the property its highest and best use. During the three-year period in which the corporation owned the building the cost was increased by permanent improvements and reduced by depreciation at the rate of 2 percent a year, on a $40,000 valuation of the building, resulting in an adjusted basis of $54,453.85. On July 1, 1940, the corporation transferred the real estate to the four individual petitioners, in proportion to their holdings of its common stock, for the following consideration: (a) the individuals assumed the unpaid mortgage, then amounting to $36,845.60; (b) the corporation was relieved of liability for accrued, unpaid salaries to the individuals; (c) the *44 balance of $8,047.25 was considered as a property dividend to the stockholders, and each paid a tax on his pro rata share thereof, after agreeing to a reduction of the unpaid salaries from $11,618 to $9,561, and to the resulting deficiencies as found by a revenue agent. Immediately upon the transfer of the property to the individual petitioners, they leased the property to the corporation which agreed to pay to the stockholders a rental of $750 per month, or $9,000 per year for the use of the premises. In addition, the corporation was to pay water rent and all city, school, and county taxes, as well as minor repairs and maintenance. Property taxes on the premises for the year 1940 were $1,400.25. The stockholders fixed the rent at $750 net per month because they thought the corporation had overpaid by $15,000 when the property was purchased from the Fidelity Trust Company in 1937. By taking the property in their individual names, the stockholders thought they could recoup "some of the original difference in the purchase of the property." In fixing the rent, they, therefore, added an additional $250 a month to the sum of $500 paid monthly to the Fidelity Trust Company as mortgage *45 interest and amortization. An additional reason was the feeling of the stockholders that in five years the building would be too small for the corporation's business, and that they had to recoup the alleged excess in purchase price within five years after they acquired the property from the corporation. Two real estate brokers, who have had experience in appraising business properties, called as witnesses by petitioners, were of the opinion that $6,000 per year was a fair net rental for the property during the years involved. A real estate broker and appraiser, called as a witness by respondent, was of the opinion that a fair gross rental for the property in 1941 would have been $4,000, in 1942 $4,500, and in 1943 $5,000. He was also of the opinion that a return of from 7 percent to 9 percent was the average return on properties such as is here involved. The corporation paid no dividends during any of the years here in issue. Each of the individual petitioners reported the following amount of gross income on his 1940 tax return: Herman Fineberg
$23,266.50
Meyer Fineberg
12,441.18
Cecil Rudin
12,543.48
Jennie Leavitte
3,511.18
In the statement attached *46 to the notice of deficiency sent to the corporation, respondent claimed: "With respect to the amount of $9,000.00 deducted in your income tax return * * * as alleged rent paid to your four stockholders on your plant (which you had transferred to them at its unrecovered cost to you), it is determined that the amount of $4,800.00 is excessive, and that the amount of $4,200.00 represents the reasonable deduction for rent allowable for that year under the provisions of section 23 (a) of the Internal Revenue Code. The excess in the amount of $4,800.00 for the year 1941 is determined to represent a distribution of profits to your stockholders in the guise of rents." In the statement attached to the notices of deficiency sent to the individual petitioners, respondent claimed: "It is determined that the property located at 6640 Frankstown Avenue, Pittsburgh, Pennsylvania, which was transferred by Iron City Industrial Clearing Corporation to its stockholders in 1940, had a fair market value of $150,000.00 at the date of the transfer; and that, accordingly, you realized taxable income for 1940 computed upon the basis of such value." The fair rental value of the *47 property for the years involved is $5,400, and all payments by the corporation in excess thereof and denominated as rent are in reality distributions of profit. Opinion Respondents having determined that a part of the payments by the corporate petitioner were not in reality rent but a distribution of corporate profits to the stockholderowners of the property, we may "inquire into and disallow payments made in excess of the amount which it [the corporation] should be required to pay for rent * * *." Limericks, Inc., 7 T.C. 1129, 1134. The case is distinguishable from Stanley Imerman, 7 T.C. 1030, on the same grounds as was the Limericks case. The factual determination appearing in our findings as to the fair rental value of the property essentially disposes of the principal issue. The finding is based upon the testimony of the witnesses produced by both sides [1] and the other circumstances involved. Neither the suggestion that the additional payments above a fair rental value can be thought of as accelerated depreciation, nor the contention implicit in the suggestion that the stockholders paid taxes at higher rates than did the corporation is persuasive. *48 It is deductions on the part of the corporation which we are here considering, and it was not the owner of the property. As to it, excessive payments could not possibly partake of the nature of depreciation. And no matter what high brackets the individual stockholders might fall into, the fact would always remain that payment of a dividend to them would call for taxes on the corporate income as well as on their own, whereas a similar payment by means of an allowable deduction taken by the corporation would eliminate the tax on that part of the corporate income. We have accordingly concluded that the amount paid as rent, and hence deductible, was the figure of $5,400 per year, and that the excess is not an allowable deduction, but is a distribution to the stockholders of corporate profits. The issue relating to the individual petitioners is confessedly no more than an alternative contention by respondent and in the light of the disposition as to the corporate petitioner, the issue involving the deficiencies *49 against the individual petitioners is disposed of in their favor. Decisions will be entered under Rule 50. Footnotes
1. One of petitioners' witnesses testified: "Probably if this property was put on the market, a reasonable long term rental would not be in excess of $6,000.00 per year."↩