J. H. Robinson Truck Lines, Inc. v. Commissioner.
J. H. Robinson Truck Lines, Inc. v. Commissioner
Docket No. 15708.
United States Tax Court
1949 Tax Ct. Memo LEXIS 62; 8 T.C.M. (CCH) 892; T.C.M. (RIA) 49242; September 30, 1949
*62 Muckleroy McDonnold, Esq., for the petitioner. F. S. Gettle, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined the following deficiencies in tax and penalties against petitioner for the years 1941, 1942 and 1943: Declared Value
Excess-Profits
Year
Income Tax
25% Penalty
Tax
25% Penalty
1941
$13,657.34
1942
10,123.38
$1,350.67
1943
14,654.18
$3,663.55
693.47
$173.37
Petitioner charges that the Commissioner erred in reducing the deductions claimed by it on account of amounts paid to its shareholder-president as rents and salary, contending that such amounts were reasonable for the premises leased from him and the services rendered by him. Petitioner also assigns error in the disallowance of legal expenses and depreciation for 1941; in the assertion of a 25 per cent penalty for failure to file the 1942 returns on time, and in the failure to allow loss carry-backs for 1942 and 1943. By amendment to the petition it claims the right to deduct various amounts on account of uncollected freight charges, drayage expense, a junked truck and the cost of *63 tires and tubes which the Commissioner is alleged to have removed from depreciable assets without either deducting depreciation on such cost or allowing it as an expense. After being set for hearing at Houston, Texas, on May 10, 1948, this proceeding was continued on petitioner's motion and reset for hearing on December 14, 1948. The case was presented on exhibits and testimony. At the hearing respondent's counsel conceded that petitioner was entitled to an unspecified loss carry-back in 1942 and 1943, but since entry of the Court's decision does not preclude proper adjustments for loss carry-backs, section 322 (g), Internal Revenue Code, we make no finding in respect thereof. Findings of Fact Petitioner, a Texas corporation with principal office at Corpus Christi, Texas, filed its income tax and declared value excess-profits tax returns for 1941, 1942 and 1943 with the collector of internal revenue for the first district of Texas. Petitioner was organized in March 1936, to engage in the transportation of freight by motor truck. The trucking business, which it took over and operates, was begun in 1921 by J. H. Robinson who owns 99.6 per cent of its stock. *64 Commencing with one truck and covering a route of 22 miles, Robinson steadily expanded the business, and petitioner now operates 140 trucks covering over 2,000 miles in south Texas, and has terminals at Houston, San Antonio, Corpus Christi, Laredo and numerous towns. Robinson is petitioner's president; his wife, who owns one share of stock, is also an officer, and its secretary-treasurer, O. H. Johnson, who also owns one share, was employed at a salary ranging from $2,820 in 1940 to $3,900 in 1943. Petitioner also employs a general manager. For the operation of its business petitioner rents from Robinson individually freight terminals located at twelve cities and towns. All of these terminals were appropriately designed and constructed for petitioner's use, and contain ample spacing for the parking of trucks and have direct approaches from the street. Some are equipped with docks to facilitate loading and unloading; eight are provided with spur railway tracks; six contain living quarters for employees, and all have office facilities. At Corpus Christi there is also a general office, a warehouse and a repair shop, and other repair shops are located at Houston and San Antonio. During *65 the years 1941, 1942 and 1943 petitioner held under lease from Robinson a total of 89,030 square feet of space in these properties, ranging in size from 1,600 square feet at Hebbronville to about 10,000 square feet at Houston, San Antonio and Alice, and 16,250 at Corpus Christi. Robinson acquired the leased properties during the years 1935-1941 at an aggregate cost of $145,438.81, and petitioner paid him as rent for their use $34,800 in 1941, $50,700 in 1942 and $49,450 in 1943. He himself determined the amount of the rent paid. Petitioner claimed these amounts as rent deductions on its tax returns for the respective years; for 1940 it claimed a rent deduction of $24,150. Petitioner also rented from others about 200 square feet of space at Austin for $40 a month; 100 square feet at Runge for $10; 400 square feet at Yorktown for $20, later raised to $40; 500 square feet at Cuero for $20, and 600 square feet at Galveston for $75. The properties rented from others were not designed for freight trucks; lacked yard space (except that at Galveston), and were leased as an emergency measure. Terminal space was scarce during the war years, and the rent demanded for them tended to rise. Robinson *66 also leased 1,000 square feet of his Houston terminal to the Yellow Transit Co. in 1941 for $50 a month, and gradually raised the rent to $125 by 1947. This space accommodated only two trucks and was located in the back of the building. Robinson, as petitioner's president, devoted his full time to petitioner's business during the taxable years, handling matters involving employees, the purchase of equipment, the Interstate Commerce Commission rules, and the like. For his services petitioner paid him a salary of $13,800 in 1940, $28,750.08 in 1941, $30,000 in 1942 and $30,000 in 1943. As reported on its tax returns petitioner's net income was $68,104.68 in 1940; $38,365.36 in 1941; $27,405.83 in 1942, and a loss of $9,700 was sustained in 1943. For 1944 and 1945 it reported losses of $53,541.44 and $115,431.07, respectively. In determining petitioner's income and declared value excess-profits taxes the Commissioner allowed deductions of the following amounts claimed on account of rents and salary paid to Robinson: Year
Rents
Salary
1941
$19,560
$13,800
1942
21,780
13,800
1943
22,140
13,800 He disallowed the excess above such amounts which was paid and *67 deducted as rents on the ground that such payments were in fact distributions of profits and disallowed the excess paid and deducted as salaries on the ground that such payments exceeded reasonable compensation. For 1941 he disallowed the deduction of $9,484.21 claimed as legal expense, and of $10,724.91 claimed as depreciation on tires and tubes. For 1943 he determined petitioner liable for a 25 per cent penalty for failure to file its tax returns for that year within the time prescribed. Opinion Petitioner leased from Robinson substantially all the terminal facilities used in its trucking business at rents which Robinson, its president and the owner of substantially all of its stock, fixed at $34,800 in 1941, $50,700 in 1942 and $49,450 in 1943. Under the view that these amounts were excessive respondent determined that a reasonable rental for the three years was $19,560, $21,780 and $22,140, respectively, and disallowed deduction of the excess paid and claimed on the returns as a disguised distribution of profits. Petitioner assigns error in these disallowances, contending that the rents paid were reasonable. As evidence it points to the $50 a month at which Robinson leased *68 a less desirable thousand square feet of the Houston terminal to the Yellow Transit Co. and the rents which it paid for small areas, aggregating less than 2,000 square feet, in five communities served by its trucks. The monthly rents for these small areas ranged from 4 cents a square foot at Cuero to 20 cents at Austin, and for the thousand feet leased to the Yellow Transit Co. at Houston the initial rent was at the rate of 5 cents a square foot, but was gradually raised to 12 1/2 cents by 1947. As indicative that the rent paid for the 89,030 square feet leased from Robinson was reasonable, petitioner computes that at 5 cents a square foot a month, this area would have produced $53,418 a year, or more than the full amounts which it actually paid as rent and now seeks to deduct. Robinson testified that he had fixed the rents at amounts which were a little less than was being paid to other people, but could not give any precise factors which had entered into his computation. Two of petitioner's former managers stated that the rents were worked out on a square foot basis at 5 to 6 cents a month, which was the rate paid to others for space. But they and Robinson admitted variations in *69 rent value, according to localities, and from the vague testimony we doubt that the amounts were computed by reference to any specific factors. We are unable to accept the rates paid for a few hundred feet of space in five communities as any index to the fair rental value of Robinson's several terminals as a whole. Although the evidence indicates that there were competitors in the south Texas area, petitioner made no effort to establish the rental paid by them for terminal facilities comparable in size and utility, or even to differentiate between the value of space in Houston and in the smaller cities and towns. Robinson admitted indeed that he never made any inquiry about the price at which similar space could have been rented from others. Being petitioner's shareholder, he had no adverse interest to protect as a lessor, and he offered no justification for the increase of rent from $34,800 in 1941 to $50,700 in 1942 except the general explanation that rents were rising. As the total investment in the terminals, acquired between 1934 and 1941, was only about $145,000, the rental for 1941 was 24 per cent of cost and that for 1942 and 1943 exceeded 33 per cent. Only very persuasive *70 evidence could convince us that rentals bearing this relation to cost were reasonable in amount, and petitioner has not offered such evidence. It has not overcome the determination that the amounts disallowed were distributions of profits rather than a payment of rent. Cf. Limericks, Inc., 7 T.C. 1129; affd. (C.C.A., 5th Cir.), 165 Fed. (2d) 483. Petitioner also charges the Commissioner with error in disallowing as a deduction a part of the salary of $28,750.08 which it paid to Robinson in 1941 and of $30,000 paid to him in 1942 and 1943. The Commissioner in each year recognized a salary of $13,800 as reasonable and deductible. This was the amount which petitioner paid Robinson in 1940. To overcome the determinations, petitioner introduced the testimony of Robinson and two former managers of petitioner's business. All stated generally that $30,000 was comparable with the salaries paid to presidents of similar trucking companies, and the former managers mentioned such amounts as paid to the presidents of Yellow Transit Co., United Transport Co., the H. & N.T. Lines and Herrin Transport Co. Their statements, however, were categorical and not supplemented *71 by details of such companies' operations and incomes or the services rendered by the presidents and the years to which the payments applied. As Robinson had fixed his salary at only $13,800 in 1940 when petitioner reported a net income of over $68,000, it would seem patently unreasonable that he should more than double it in 1941 and 1942 when the net income reported was less than $30,000, and certainly in 1943 when petitioner reported a net loss. The drastic increases in rent and salary during the taxable years materially reduced petitioner's net incomes, and give color to respondent's determination that a part of the amounts paid to Robinson under these guises were simply "distribution of profits." In 1942, for example, petitioner reported a net income of $27,405.83, and paid to Robinson $30,000 as salary and $50,700 as rent. We can not regard as justified sudden large increases in salary and rent for years succeeding 1942 which resulted in net losses for petitioner. The witnesses' categorical statements regarding the salary of corporate officers in competitive enterprises is not sufficiently persuasive to overcome the Commissioner's determinations, and we, therefore, sustain them. *72 In its original petition petitioner also charges error in the Commissioner's disallowance of $9,484.21 claimed as legal expense and of $10,724.91 claimed as depreciation for 1941, and for his failure to allow loss carry-backs from succeeding years in 1942 and 1943. By amendment to the petition it also asserts the right for 1941 to deduct $900 on account of a junked truck; $910.33 of uncollectible freight charges; $7,024 as expense for truck tires and tubes which it alleges was excluded by the Commissioner from depreciable assets and was charged to expense under regulations of the Interstate Commerce Commission, and $100 as drayage expense. Petitioner's general manager, J. A. Ryndak, who was not in its employ during the taxable years, testified briefly in regard to these issues on the basis of an examination of petitioner's books and records. It was his inference that the Commissioner in 1941 and 1942 had excluded the cost of tires and tubes from depreciable assets without deducting such cost as expense; that no proper adjustment had been made for a freight revenue item of $910.33 which was uncollected; that no loss had been allowed on a truck and three passenger cars which the *73 revenue agent had eliminated from depreciable assets. Whatever merit there may be in these and other allegations of errors by the Commissioner, petitioner has failed to establish any adequate factual basis for a consideration of them by this Court. The witness' testimony was little more than opinion, and affords no basis for the reversal of a determination. No reference was made in the testimony or petitioner's brief to the 25 per cent penalties determined for failure to file the 1943 return within the prescribed time. Decision will be entered for the respondent.