OPINION. Murdock, Jvdge: Section 23 (a) (1) (A) allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on the taxpayer’s business. The deduction includes “rents or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property.” The rentals payable to the owners of the property were required to be made as a condition to the continued use of the.property for the purposes of the business of Stanwick’s, Inc., and deductions from those amounts have been allowed. The principal question in this case is whether Stanwick’s, Inc., is entitled to a deduction for the excess over those amounts which it paid to Ruth under the percentage of gross profits lease. The taxpayer has the right to conduct his business according to his own desires and the form he chooses will generally be respected. However, transactions involving a husband, a wife, and a wholly owned corporation, having the obvious effect of reducing taxes, may be questioned by the Government and.-should be.subjected to special scrutiny to see whether the form employed to carry out the challenged tax event is genuine or sham. Higgins v. Smith, 308 U. S. 473; Helvering v. Clifford, 309 U. S. 331; Commissioner v. Court Holding Co., 324 U. S. 331; Commissioner v. Tower, 327 U. S. 280; Home Furniture Co. v. Commissioner, 168 Fed. (2d) 312; 1432 Broadway Corporation, 4 T. C. 1158, 1165. The inference here is inescapable that the leases were designed for the avoidance of taxes, and were lacking in substance. The statute does not expressly refer to the reasonableness of rent paid for the use of property, but payments do not constitute ordinary and necessary expenses or payments required to be made as a condition to the continued use of property, where they are in excess of the amount which the taxpayer should be required to pay and where there is a close relationship between the taxpayer and the one collecting the excessive rent. Limericks, Inc., 7 T. C. 1129, 1134, affd., 165 Fed. (2d) 483. The Appellate Court, in that case said “The statute does not permit the deduction of an amount which is in no sense a legitimate business expense.” Here motives other than the necessities of the business motivated the leases between Alperstein and his wife and. between Alperstein’s- wholly owned corporation and his wife. They were not at arm’s length and would not have been entered into by parties not intimately related. Cf. Wilhelmina Dauth, 42 B. T. A. 1181; Granberg Equipment, Inc., 11 T. C. 704. The fact that the obligation would be enforceable between the parties does not make the payments deductible under section 23 (a) (1) (A). Interstate Transit Lines, 44 B. T. A. 957, affd., 130 Fed. (2d) 136, affd., 319 U. S. 590; Deputy v. duPont, 308 U. S. 488. Stanwick’s, Inc., had never had a lease on the property prior to the one here in question. Alperstein had leased the property from the owners and then, without any written agreement or corporate minutes, had allowed the corporation to occupy the premises and had had it pay the rent. The lease, in effect at the beginning of June 1943, had about three years to run and apparently Stanwick’s, Inc., could have continued indefinitely with the same satisfactory arrangement which had been in effect since its incorporation in 1927. Its gross sales for 1941,1942, and the first part of 1943, were increasing. Six per cent of chose sales was far in excess of the rent which Stanwick’s, Inc., was paying. No business reason would have prompted it to seek a new lease under which it would pay 6 per cent of its gross sales instead of the fixed rental which it had theretofore paid. The change resulted from no difficulty between lessor and lessee or between Alperstein and his alter ego, Stanwick’s, Inc. Alperstein deliberately brought about the change to suit his own convenience, for his own purposes, and at great loss to Stanwick’s, Inc. Ruth did not seek the arrangement but merely acquiesced in the suggestions of her husband. The evidence does not indicate that Ruth had any idea of what her chances would be under the sublease. Actually, the prospects were that her profits would be large and entirely at the expense of Stanwick’s, Inc. The obvious result of such an arrangement, if it was to be effected, would be to give the corporation a large deduction, thus avoiding high taxes on its part and, at the same time, syphoning earnings of the corporation into the hands of Ruth, whose taxes were low as compared to those of her husband. Alperstein was aware of the tax aspects. Alperstein went to some lengths in an effort to establish the reasonableness of a lease based upon 6 per cent of gross sales. Perhaps such a lease might have been entered into during a depression or in case of necessity. However, the two real estate men who were consulted by Alperstein did not know that there was no necessity to change an existing lease, and were not familiar either with the terms of the existing •lease or with the grossisales and the trend in those gross sales; at the time they were consulted. Alperstein testified that he thought such a lease would be beneficial to the corporation because it would protect it if sales fell off, and, further, that he would have made it with a stranger. There was no depression and no necessity for such a lease, and his testimony in the light of the other evidence overstrains credulity. It is difficult to believe that Alperstein would have allowed his corporate business to benefit at the expense of the small amount of property which Euth owned. But the most damaging evidence would seem to be the sales. Alperstein testified that he expected sales to decline, but he obviously did not expect them to decline sufficiently that during the period of the new lease 6 per cent of gross sales would average less than the amount payable to the owners. That is inconsistent with his testimony that he expected his wife would have a profit. It was obvious that rent based upon 6 per cent of gross sales would far. exceed that being paid the owners, and actually it resulted in payments to Euth which were more than twice the. amounCpayable to the owners. The whole arrangement was superficial, artificial, and not an arm’s length transaction between people having different interests dealing for some genuine business purpose. It was lacking in reality and was merely a device to reduce taxes. The taxability to Alperstein of the excessive amounts paid to his wife by Stanwick’s, Inc., is not separately argued. His command of the income of Stanwick’s, Inc., thus paid to his wife, makes it taxable to him. Harrison v. Schaffner, 312 U. S. 579; Helvering v. Horst, 311 U. S. 112. Excessive rent may be dividends, Limerick, Inc. v. Commissioner, supra, and that is true where, the sole stockholder exercises his control to have the funds paid to his wife for his own satisfaction. Cf. Ingle Coal Corporation, 10 T. C. 1199, affd., 174 Fed. (2d) 569. The Commissioner, in determining the deficiencies against Fred H. Alperstein, reduced the deductions claimed on the returns for medical expenses solely because of increased income resulting from other adjustments. The petitioner assigned that action of the Commissioner as error so that it could be adjusted in case the income was not as great as determined by the Commissioner. The parties have indicated that if any change in income is made they will make the necessary adjustments in the deduction for medical expenses. However, the holding herein is for the Commissioner on the income question and, consequently, his reduction of the medical expense deduction was proper. Decisions will be entered for the respondent.