Estate of Frederick W. Sullivan, Sr., Incompetent, Roger N. Tuner, Guardian, et al. * v. Commissioner. Estate of Frederick W. Sullivan, Sr. v. Commissioner
Docket Nos. 22801, 22814, 22815, 22816.
United States Tax Court
1951 Tax Ct. Memo LEXIS 143; 10 T.C.M. (CCH) 729; T.C.M. (RIA) 51236; August 10, 1951
*143 Rental "required" to be paid for dairy property determined. Walter P. North, Esq., 1408 Central Tower Bldg., Battle Creek, Mich., for the petitioners. Cyrus A. Neuman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent has determined the following deficiencies in petitioners' income taxes: 1944
1945
1946
Estate of Frederick W. Sullivan, Sr., Docket No. 22801
$4,965.08
Ralph A. Sullivan and Maxine V. Sullivan, Docket No. 22814
6,224.78
$6,791.75
Estates of Frederick W. Sullivan, Sr., and Sarah A. Sullivan,
Docket No. 22815
6,709.72
$5,836.15
Ralph A. Sullivan, Docket No. 22816
6,216.70
Petitioners contest those portions of the deficiencies arising from the respondent's partial disallowance of the rent paid by the partnership and claimed as an expense deduction in computing partnership net income. The cases were consolidated for hearing and opinion. Findings of Fact Petitioners are individuals residing at 99 Guest Street, Battle Creek, Michigan. The income tax returns for the periods here involved were filed with the Collector of Internal Revenue for the Eastern District of *144 Michigan. Frederick W. Sullivan, Sr., was engaged in the dairy business under the business name of Sullivan Milk Products for about 30 years prior to 1937, in the City of Battle Creek, Michigan, and environs, where he processed and sold milk and milk products and operated a retail ice cream soda bar at the front of the main dairy plant. For many years prior to 1937 he owned the premises on which he conducted his dairy business. On November 30, 1937, the F. W. Sullivan Co., a Michigan corporation was incorporated, and the land and buildings used by Frederick W. Sullivan, Sr., in the conduct of his dairy business and a farm on which he lived and which he operated were deeded to the corporation in exchange for its capital stock. This stock was initially distributed in part to Frederick W. Sullivan who received 315 shares and in part to other members of his immediate family, consisting of his wife, Sarah A. Sullivan, who received 180 shares, his daughter, Sylvia Sullivan Maes, who received 130 shares, and his two sons, Ralph A. Sullivan and Frederick W. Sullivan, Jr., who received 1 and 155 shares, respectively. At the time of this incorporation, Frederick W. Sullivan, Sr., took *145 in his son Ralph as an equal partner in a partnership known as Sullivan Milk Products which was organized to conduct the dairy business. Ralph had begun working for his father on a full time basis in 1924 and over the years had gradually assumed more and more responsibility for the management of the business, as his father, who died in 1949 at the age of 84 years, sought retirement. Since the time of the incorporation of the company and the formation of the partnership, the partnership has rented the land and buildings used in the dairy business from the F. W. Sullivan Co. Since that time and until the beginning of 1943, the rental consisted of 1 1/2 per cent of the gross sales of the partnership. The buildings thus rented consisted of the following: 47 Kalamazoo Street, Battle Creek, Michigan - 3-story building 43 Kalamazoo Street, Battle Creek, Michigan - physically a part of the building at 47 Kalamazoo Street, but only one-story high 49 Kalamazoo Street, Battle Creek, Michigan - 1-story building Cass Street property - a 2-story garage building, a row of garages and open sheds, and a bungalow The corporation continued to own the farm until late 1945 and retained possession *146 of it until some time in 1946 when the farm equipment and livestock were sold. In addition to the property which Frederick W. Sullivan, Sr., deeded to the corporation in 1937, the premises rented by the partnership from the corporation during the three years in question included a parking lot which the corporation acquired at a cost of $5,200 in 1937, and the ground floor of a building at 55 Kalamazoo Street (next door to the main dairy plant), for which the corporation paid Ralph A. Sullivan, its owner, $200 a month and, in turn, subrented to the partnership as a part of the over-all premises rented at two per cent of gross sales. All of these properties were rented without a written lease. During the years 1937 through 1942, the corporation showed losses each year (except 1940 when it earned a profit of $455.94), ranging from $5,358.24 to a little over $200, although it paid no salaries to any member of the family, except one salary of $1,800 a year to the person in direct charge of the corporation, such person being at one time the daughter, Sylvia, and later the son, Ralph. These losses were due in part to unprofitable farm operations and in part to the unprofitable rental *147 of dairy properties. During the years 1937 through 1942, the corporation had not declared any dividends. Early in 1943 the Sullivans retained the George H. Beach Company, a New York City firm of business and estate analysts and consultants, to make a detailed study of their business and estate affairs, and one of the recommendations which this firm later made was that the rate of rent which the corporation charged the partnership should be increased, because the corporation showed losses each year and was in debt to Frederick W. Sullivan personally in an amount exceeding $7,300, which it could never repay to him or his estate unless rents were raised to a point at which the corporation could make an annual profit. In making this recommendation, the firm advised that this increased rental would result in certain tax savings, principally to the partners. Based on this recommendation and in order to make cash available for needed improvements to its properties, the corporation on October 14, 1943, increased the rental from 1 1/2 per cent of gross sales to 2 per cent of gross sales, effective as of January 1, 1943. No written lease was executed at this time or at any time up to and *148 including the years in question. At the time the rental rate was increased, the stock in the corporation was held as follows: Frederick W. Sullivan, Sr.
172 1/2 shares
Sarah A. Sullivan
30 shares
Sylvia S. Maes
270 shares
Frederick W. Sullivan, Jr.
120 shares
Ralph A. Sullivan
188 1/2 shares
781
Due to this increase in rental rate, coupled with increases in the prices of dairy products, the opening of the Army's Percy Jones General Hospital at Battle Creek, and the war-time expansion of Fort Custer at the outskirts of Battle Creek (both the hospital and the fort became substantial customers of the Sullivan Dairy), and the release of restrictions on the use of sugar in 1946, which enabled the Sullivans to increase their manufacture and sale of ice cream and related products, the gross rent paid by the partnership to the corporation rose to an average of nearly $22,000 a year for the three years in question, which was about double the annual rent paid in the last two years before the increase in rental rate. The rents received by the corporation from the partnership starting with the first full calendar year after incorporation and continuing through *149 December 31, 1946, were as follows: Year
Per-
Ending
Partnership's
centage
Amount
Dec. 31
Gross Sales
Rate
of Rent
1938
$ 521,187.31
1 1/2%
$ 7,817.81
1939
517,813.23
1 1/2%
7,767.20
1940
538,749.64
1 1/2%
8,081.24
1941
679,294.76
1 1/2%
10,189.43
1942
736,488.40
1 1/2%
11,473.28
1943
1,030,583.61
2 %
20,611.67
1944
1,007,886.16
2 %
20,157.72
1945
1,039,471.79
2 %
20,789.44
1946
1,245,703.35
2 %
24,914.07
The corporation reported the following gross rentals received from the partnership, the expenses attributable to the rental operations, and net rental income for the fiscal years ending November 30, 1944, 1945 and 1946: Year Ending
Year Ending
Year Ending
11/30/44
11/30/45
11/30/46
Rents received by F. W. Sullivan Co. from
partnership
$20,203.89 *
$21,841.52 *
$23,478.74 *
Expenses: Officers' salaries
$1,800.00
$1,800.00
$1,800.00
Wages
727.92
727.92
727.92
Rent paid
2,400.00
2,400.00
2,400.00
Taxes
1,606.54
2,736.38
1,526.67
Depreciation
2,441.27
2,438.28
2,499.72
Dues and subscriptions
79.00
Insurance
1,395.92
Interest
8.45
Legal and accounting
90.00
372.03
Repairs
464.61
Advertising
12.84
9,054.73
10,201.03
11,199.71
Net rental income
$11,149.16
$11,640.49
$12,279.03
*150 The original cost to the corporation of the land and buildings rented by it to the partnership, starting in 1937, was $52,916.43, arrived at as follows: Total capital stock issued in exchange
for corporation's starting assets
(corporation started with no lia-
bilities and with no assets other
than the ones rented to the partner-
ship, and farm assets), 781 shares at $100 each
$78,100.00
Less farm land, buildings, etc., not
rented to partnership
25,183.57
Cost to corporation of land and build-
ings originally rented to partner-
ship
$52,916.43
The amount of insurance carried on the main plant at 43-47 Kalamazoo Street is $95,374 under 80 per cent co-insurance policies, and the amount carried on the large building on Cass Street is $22,110, also on an 80 per cent co-insurance basis. The row of garages and sheds on Kalamazoo Street are insured for $2,300 and the bungalow is insured for $2,000. In 1940, 1941 and 1942, the partnership paid for improvements *151 and additions to the corporation's buildings in a total amount of $56,235.09, which it (the partnership) has capitalized and on which it takes depreciation in its income tax returns. This amount was spent largely for building additions at the rear and westerly side of the main plant at 47 Kalamazoo Street, which additions enhance the building's value, mainly for dairy purposes. Frederick W. Sullivan, Sr., died December 13, 1949, and Sarah A. Sullivan died January 4, 1950. The executor of his estate and the administrator of her estate have been substituted as parties herein in the suits wherein they were parties. The sums paid by the petitioner to the Sullivan Company and deducted as rental expenses were rental payments required to be made as a condition to the continued use and possession of the property in question. They are deductible in full as rental expenses. Opinion ARUNDELL, Judge: The factual question before us is whether the partnership is entitled to deduct as rental expenses the entire sums paid to the Sullivan Company during the years in question. Respondent has partially disallowed the deductions on the ground that they were unreasonable in amount and, on brief, *152 argues that the sums in excess of $10,200 per year constituted a contribution to the Sullivan Company's capital. Section 23(a)(1)(A) of the Internal Revenue Code limits rental deductions to those rentals the taxpayer is "required" to pay by providing for the allowance as deductions of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business and "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." Stanley Imerman, 7 T.C. 1030. When there is a close relationship between lessor and lessee and in addition there is no arm's length dealing between them, an inquiry into what constitutes a reasonable rental is necessary to determine whether the sum paid is in excess of what the lessee would have been "required" to pay had he dealt at arm's length with a stranger. Manos v. Commissioner, 187 Fed. (2d) 734, affirming a Memorandum Opinion of this Court [8 TCM 1025]; Stanwick's, Inc., 15 T.C. 556, *153 aff'd. C.A. 4, June 25, 1951; Limerick's, Inc., 7 T.C. 1129, aff'd., 165 Fed. (2d) 483; Hightower v. Commissioner, 187 Fed. (2d) 535. See Commissioner v. Lincoln Electric Co., 176 Fed. (2d) 815. The sums in question were paid under an oral agreement pursuant to which the corporation rented to the partnership certain dairy properties at a rental based on a percentage of gross sales. The computing of rentals on a percentage of sales basis came into use during the depression years and was employed by the corporation from the time it first began renting these properties to the partnership in 1937. The respondent had not contested either the amount paid or the method of computation at any time prior to this controversy. The only change in the rental arrangement throughout these years was an increase in the rate from 1 1/2 to 2 per cent in 1943. We think this increase was neither unwarranted nor unreasonable in amount. There can be no doubt that a rate of 1 1/2 per cent was inadequate. The corporation was continually suffering losses from the rental of these properties at that rate, was without funds to discharge its obligation owing *154 to Frederick W. Sullivan, Sr., and was advised to increase the rate one-half per cent by a firm of consultants retained early in 1943. The increase was not put into effect after a year of substantial increase in partnership profits or in some other circumstance which would indicate that the increase was merely a subterfuge to effect tax savings. It is clear from the facts as found that there was no identity of interests between lessor and lessee, and respondent has not shown how it would have been to the best interests of Ralph, who held an equal one-half interest in the partnership, to contribute the partnership funds to a corporation in which he held much less than a one-half interest. Two well qualified experts from Battle Creek, one a realtor, the other an executive vice-president of a savings and loan association, testified that a rental based on two per cent of gross sales was fair and reasonable. Their estimate was based on two sound methods. They assessed the value of these properties and with that as a base calculated a minimum annual rental that would justify the corporation's investment in these properties. Secondly, they determined the purposes for which these properties *155 could be used and calculated the rental they would yield when so used. Under both of these methods, the rental in question was found to be reasonable. The sum submitted by respondent as a reasonable rental is based mainly on the testimony of his expert witness who expressed the view that a lessee dealing at arm's length would have been required to pay a rental of only $10,200 per year for these properties during the years in question. However, this conclusion was reached without taking into account the expenses of the lessor corporation or the fact that there may not have been comparable property available in Battle Creek. The expenses attributable to these properties totaled approximately $11,000 to $12,000 during the years in question. In view of the fact that there does not seem to have been any comparable property available and the further fact that during these war years it was costly and sometimes impossible to build new plants, we think it was unrealistic to estimate a rental without assuming that the lessor would take into account his expenses and fix a rental that would yield at least a fair return on his investment. We are, of course, aware of the relationship between *156 the estimated value of the property and the gross rentals earned thereon under the two per cent rate during the years in question. However, the reasonableness of a percentage rental cannot be ascertained by taking into account only the sums it yields in unusually prosperous years such as these. "That the amount of rent rises and falls with the trend of the business and is greater in the year or years when business is best is an accepted characteristic of a percentage lease." Stanley Imerman, supra, p. 1037. After carefully studying the testimony of the experts, analyzing the basis of their conclusions, and taking into account the circumstances in which the two per cent rate was put into effect, we do not feel warranted in concluding that any part of the sums paid to the Sullivan Company during the years in question were unreasonable in amount or constituted anything other than payment of a required rental. Decisions will be entered under Rule 50. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Ralph A. Sullivan and Maxine V. Sullivan; Estates of Frederick W. Sullivan, Sr., and Sarah A. Sullivan, Incompetents, Roger N. Tuner, Guardian; and Ralph A. Sullivan.↩
*. The above figures showing rent received by the corporation, being based on a fiscal year ending November 30th, vary slightly from rents which the partnership paid on a calendar year basis.↩