T.C. Memo. 1998-432


UNITED STATES TAX COURT


JUNG SIK LIM & BOK S. LIM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17433-97.                    Filed December 10, 1998.


<u>Matthew J. McCann</u>, for petitioners.

<u>Wendy L. Wojewodski</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined a deficiency in petitioners' 1993 Federal income tax of $8,909.  Petitioners claim an overpayment of their 1993 Federal income tax in the amount of $4,172.  Respondent has conceded all adjustments determined in the notice of deficiency, and the remaining issue concerns petitioners' claim for an overpayment.  In order to

address petitioners' claim for an overpayment, the parties have asked us to decide whether the interest paid by petitioners is deductible as business interest. If the interest is deductible as business interest, petitioners would be entitled to certain deductions that were not originally claimed, and, in turn, they would be entitled to an overpayment.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT[1]

At the time their petition was filed, petitioners resided in Temple Hills, Maryland. During August 1992, petitioners and petitioner husband's sister-in-law purchased real property located at 3302 Branch Avenue, Temple Hills, Maryland (Branch property). Although the sister-in-law was a named purchaser, she was only nominally involved in the real estate acquisition. The improvements on the property were a two-story building (Branch building) and a parking lot. Concurrent with the Branch property purchase, the shares of stock of Volm's Enterprise Corp. (Volm's) were purchased from the seller of the real estate. Volm's, a subchapter C corporation, operated a liquor store on the first floor of the Branch building under the name "Branch Avenue

---

[1] The stipulations of fact and attached exhibits are incorporated herein by this reference.

Liquors". Petitioners acquired 75 percent and the sister-in-law the remaining 25 percent of Volm's shares of stock.

After the purchases of the realty and corporate stock, Volm's continued to use the ground floor of the Branch building to operate a liquor store. Petitioners, in addition to being the majority owners of the liquor business, devoted the majority of their time to the operation of the Branch building liquor store business. Petitioners and the sister-in-law used part of the second floor of the Branch building as their personal residence. The first floor of the Branch building, which is 2,640 square feet, is slightly larger than the second floor, which is 2,160 square feet. Volm's also used a 286-square-foot office on the second floor of the building. Overall, 61 percent of the Branch building is used by Volm's to operate the liquor store, and 39 percent is used by petitioners and relatives as their personal residence.

During 1993, the liquor store business did not make rental payments directly to petitioners for the business' use of the Branch property. Although there was no written lease, the liquor store business paid certain expenses incurred in connection with the Branch property in exchange for its use of the building. Volm's paid the real estate taxes on the Branch property of $4,384.45 during 1993. Volm's also paid all of the utilities, including the electric, gas, and sanitation costs, incurred for

the Branch property. The utility payments included the portion used by petitioners and others as a personal residence. Petitioners did not report as rental income on their 1993 Federal tax return Volm's payments of utility expenses or the real estate taxes. Petitioners, likewise, did not claim the interest or depreciation paid or incurred in connection with the liquor store business' rental of the Branch property.

Other than the payment of utilities and taxes by Volm's, rent payments were not made during the 1992 or 1993 tax years because of Volm's startup cash-flow problems. Beginning in 1994, Volm's began paying $3,000 monthly rent payments to petitioners.

The purchase price of the Branch property was $700,000, and petitioners incurred settlement costs of over $60,000. The purchase price of the property was allocated 57 percent to the land and 43 percent to the building. Petitioners obtained an $800,000 Small Business Administration loan (SBA loan) to purchase the Branch property. The seller of the Branch property retained a security interest in the property to secure seller-financed debt of $280,000. Although the sister-in-law was designated as a purchaser, she did not contribute any money toward the purchase of the Branch property and did not make any mortgage payments on the loans secured by the property. During 1993, petitioners made interest payments of $69,193.40 and $21,163.68 on the SBA and seller-financed loans, respectively.

OPINION

Petitioners did not report income from rent or claim deductions for interest or depreciation in connection with Volm's use of the first floor and part of the second floor of the Branch property.[2]  Petitioners claim an overpayment of the tax paid for 1993 based on the excess of deductions over the income that they did not report or claim.  With respect to the deficiency determined, respondent concedes that petitioners would owe no additional tax for 1993, even if their overpayment was not allowed.

Respondent does not dispute the fact that petitioners paid the interest totaling nearly $90,000.  We have found the allocable percentages of business and personal use of the realty and the allocable percentages of the purchase price attributable to the land and building.  The parties have couched the issue for our consideration solely in the context of whether petitioners rented a portion of the Branch property to Volm's.[3]  If we decide

---

[2] In the context of the taxable year before the Court, petitioners' failure to report income attributable to Volm's payments of taxes, utilities, and expenses does not preclude the possibility of an overpayment.  That is so because petitioners also failed to claim deductions in amounts far in excess of the amount of any unreported income attributable to Volm's payments.  Accordingly, unreported income would "wash" with the unclaimed deductions, leaving sufficient amounts to generate the overpayment sought by petitioners.

[3] Although the fact pattern in this case could easily have generated issues concerning investment interest, passive loss

(continued...)

that there was a valid rental agreement between petitioners and the liquor business, then respondent agrees that petitioners would be entitled to interest and/or depreciation deductions on Schedule E or Schedule A, as appropriate. Petitioners concede that they failed to report, as income, the payments made by the liquor business on the real property and that they failed to claim any interest (personal or business) or depreciation deduction to which they may be entitled. The parties agree that if we decide that petitioners are entitled to deduct the business interest, petitioners would be entitled to an overpayment to be computed by the parties.[4]

---

[3](...continued)
activity, and related matters, the parties agreed that if we decide that Volm's and petitioners had a valid business rental arrangement, then petitioners will be entitled to an overpayment to be computed by the parties. If we decide otherwise, petitioners will not be entitled to an overpayment or be liable for a deficiency. Accordingly, the parties agreed at trial that the sole determinant to deductibility lies in the answer to the question of whether petitioners and the liquor business had a landlord and tenant relationship and whether rent was paid.

[4] We note that the parties' arguments were cryptic and difficult to follow. For example, even though respondent agreed that the outcome of this case depended solely on the whether a rental relationship existed between petitioners and the liquor business, respondent argued that the limitations of sec. 163(d) would apply to petitioners' interest payments on the Branch property. Because of the manner in which the issue was posed by the parties and the limited scope of our inquiry, we must assume that respondent agrees that sec. 163 would not limit petitioners' deduction if we decide the issue, as framed, in petitioners' favor.

Respondent argues that the absence of a rental agreement between petitioners and the corporation is a factor that supports a finding that the property at issue did not produce rental income.[5] Petitioners counter that rent payments were not made by the corporation for use of the Branch property initially because of a lack of cash-flow. Instead of making rental payments to petitioners, the corporation paid the utilities and other expenses incurred in operating the building. Separate corporate income tax returns were filed by Volm's in which its income and expenses were reported. By the third year after the purchase (the year following the one in issue), the corporation was able to, and did, pay a $3,000 monthly rental to petitioners. Initially, rent was paid for use of the building in the form of the payment of expenses. Although petitioners did not report Volm's payments of utilities and other expenses as rent, they also did not claim the corresponding deductions for interest and depreciation attributable to Volm's usage of the Branch property.

Generally, for purposes of deductibility, a taxpayer may deduct reasonable rents paid for property used in a trade or

---

[5] Respondent also referenced subsecs. 1.469-1T(e)(3)(ii), (vi), and (vii), Temporary Income Tax Regs., 53 Fed. Reg. 5702, 5703 (Feb. 26, 1988), for his argument that Volm's and petitioners were in some type of joint venture, under which Volm's was allowed to operate the liquor business in the Branch property. Because we find that there was a rental agreement between petitioners and the liquor business, it is not necessary to further address this aspect.

business.  Sec. 162(a)(3); <u>Limericks, Inc. v. Commissioner</u>, 165 F.2d 483, 484 (5th Cir. 1948), affg. 7 T.C. 1129 (1946).  A taxpayer may rent property from a related person or entity, but the deduction is limited to an amount that would have been paid if the parties had dealt at arm's length.  <u>Sparks Nugget, Inc. v. Commissioner</u>, 458 F.2d 631, 635 (9th Cir. 1972), affg. T.C. Memo. 1970-74; <u>Levenson & Klein, Inc. v. Commissioner</u>, 67 T.C. 694, 715 (1977); <u>Coe Lab., Inc. v. Commissioner</u>, 34 T.C. 549, 585-586 (1960).  Here, however, the amount of rent paid by Volm's, in the form of the payment of expenses on the Branch property, was less than the $3,000 monthly rent that was paid when Volm's became liquid.

An oral lease between related parties has sufficed as the basis for rental deductions.  E.g., <u>Wy'East Color, Inc. v. Commissioner</u>, T.C. Memo. 1996-136.  Here, an established corporate entity was using petitioners' real property for business purposes.

Our holding in response to the limited question posed by the parties is that a business rental relationship existed between petitioners and the liquor business (Volm's).  Accordingly, petitioners are entitled to deduct business interest in an amount attributable to the portion of the property used for the liquor business.  To the extent that the interest is attributable to

petitioners' personal residential use of the property, it would be deductible, subject to the appropriate limitations.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155.</u>