### O'LAUGHLIN v. HELVERING, Com'r of Internal Revenue.

No. 6494.

United States Court of Appeals for the District of Columbia.

Argued Nov. 8, 1935.

Decided Dec. 16, 1935.

Laurence Graves, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Robert H. Jackson, Nathan Gammon, Sewall Key, John MacC. Hudson, and Harry Marselli, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

In 1927 and 1928 Central Lime & Cement Company, an Illinois corporation, was in the business of selling building and paving materials in the city of Chicago and in fifty or sixty towns and villages in Cook county, Ill. Petitioner was its secretary.

In February, 1927, the board of directors of the corporation adopted the following resolution:

"*Resolved,* That an amount equivalent to one-fourth of one percent of the total sales for the year 1927 be appropriated to be used in payment of commissions on various sales made by individuals other than the company's regular salemen.

"*Resolved further,* That the treasurer be authorized to have checks drawn from time to time during the year to * * * Charles J. O'Laughlin (petitioner) who will in turn make payments to the proper parties in connection with each sale."

In February, 1928, a similar resolution was adopted.

Under these resolutions the corporation paid to petitioner $19,438.76 in 1927 and $48,165.41 in 1928. The corporation carried those amounts in a commission account, and they were treated as payments of commissions to petitioner.

In his income tax returns for 1927 and 1928 petitioner included, as commissions received by him, the sums of money mentioned above (in addition to his salary from the corporation) and he claimed these same amounts as deductions for "commissions paid out." He explained the deductions in his returns as money disbursed to cover commissions to various individuals for business secured for the corporation. The Commissioner disallowed

the deductions, saying that no data had been produced in support of the payments as claimed. The Board of Tax Appeals approved.

The ground of appeal is that the Board erred in not holding that the money received by petitioner was the property of the corporation and was received and disbursed by him on behalf of or as agent of the corporation.

In the argument and in the brief we are told that at the hearing petitioner showed by his uncontradicted evidence that, after receiving from the corporation money due to others, he duly paid the same to persons entitled to receive it and retained none of it himself; and consequently that he realized no gain or profit or income as a result of handling the money, and was merely the conduit through which payments passed from the corporation to the persons entitled thereto.

The Commissioner relies upon the presumption of correctness which attaches to his determinations and insists that petitioner has introduced no evidence sufficient to overcome it. The question for decision, therefore, is: Did the Board err in disregarding petitioner's testimony?

The income tax statute defines gross income to include "gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid." Revenue Act 1928, § 22 (a), c. 852, 45 Stat. 791, 797, 26 U.S.C.A. § 22 and note.

We start out, then, with the admission by petitioner that he did receive the money, and our next step is to determine whether the evidence convincingly shows that he received it as agent and disbursed it in accordance with the resolutions of the corporation. These, as we have seen, appropriated the money "in payment of commissions"; and petitioner in his tax return says he disbursed it as commissions, but in his testimony to the Board he says he donated some of it to Christmas basket funds, some to labor unions, some for admission tickets to prize fights, football games, and banquets, and the most of it to political organizations for campaign purposes. He told the Board that the year 1928 "was a heavy election year. Everybody felt they were entitled to ask us for fifty, two hundred or five hundred dollars, depending on what position they were running for, what position they were out to be elected for"; and it was necessary in the operation of the business to "go along with them." For prize fights, and for football games, he would buy a block of tickets "and send two to one person, four to another, and so on." When a ward of a city had a dance, petitioner would subscribe $100 or $200 for an advertisement in the program. But that he kept no record of any expenditure; that he did not know to whom he made any of the payments, or the amounts or the dates when the payments were made; and that none of the money was disbursed in payment of commissions.

The Board, as we have seen, rested the conclusion upon the presumption that the Commissioner's determination of the facts was correct and that petitioner had not borne the burden of proving it to be wrong.

We think the order of the Board should be affirmed. The allowance of deductions in determining taxable income is a matter of grace, and the taxpayer making such deductions must point to an applicable statute and show that he comes within its terms.[1] When a deduction is claimed, the government has an undoubted right to demand a full disclosure of the facts on which the claim is based, for otherwise it would be at the mercy of the unscrupulous taxpayer. Taxation is not only practical—it is vital. The obligation of good faith and fair dealing in carrying out its provisions is reciprocal and, as the government should never be overreaching or tyrannical, neither should a taxpayer be permitted to escape payment by the concealment of material facts. This appeal presents an instance in which that result would follow a reversal of the Board's order; for here we have a case of a corporation which paid out the sums in question and charged them to the expenses of conducting business, thereby obtaining the benefit of a reduction in taxation—while if the testimony of petitioner is accepted as true the greater part of the deduction was not expenses but political contributions, which are nondeductible (Art. 262, Regulations 74, 1928). Or, again, if the person who pays money to another may, by the simple expedient of a faulty memory, leave such payee concealed, the result will be to deprive the government of the means of imposing a tax on the payee. In this

[1] New Colonial Ice Company v. Helvering, 292 U.S. 435, 441, 54 S.Ct. 788, 78 L.Ed. 1348.

aspect, it is not enough for petitioner to say that, as to money admittedly received and chargeable to him as income, he has disbursed the same for the account of his master and in the same breath to say that he cannot remember the amounts, the dates, or the persons to whom he paid it.

In saying this we have no purpose to modify in any sense the rule that where an unimpeached witness testifies positively to a fact, and is not contradicted, ordinarily the fact so testified to may be taken as established; but the rule is subject to many exceptions, among which is the inherent improbability of the truth of the fact testified to. "It is a wild conceit that any court of justice is bound by mere swearing; it is the swearing credibly that is to conclude its judgment." The Odin, 1 C.Rob.Adm. 252. Petitioner's testimony that he disbursed, for another, sums in excess of $60,000 in a period of two years, without being able to name a single person to whom he gave the money, is, to speak frankly, wholly unbelievable. If petitioner whatever his motive, has suppressed the truth in this respect—as admittedly he did when, in his return, he claimed to have disbursed the money "as commissions"—it would be going very far to say that his statement that he had retained none of it personally ought to be accepted as true. A similar situation arises frequently on applications for a discharge in bankruptcy and in contempt proceedings for concealment of assets. In such cases when the bankrupt is shown to have had possession of property and money within a comparatively recent period—which at the time of bankruptcy had disappeared—and is asked to explain what had happened to it, and answers "I don't know," or "I can't say," or "I don't remember," or that he had lost it in gambling, without remembering where or with whom he gambled—the inference of falsity is generally obvious. And in such cases the fact that the bankrupt is not contradicted in his main statement that he no longer has the property or the money is always held insufficient to justify either the granting of a discharge or the refusal to impose punishment for the concealment. In re Kaplan (D.C.) 245 F. 222; Brenner v. Gaunce (C.C.A.) 28 F.(2d) 606; Reiss v. Reardon (C.C.A.) 18 F.(2d) 200. But here, as we think, we do not need to rely alone upon this exception to the rule we have discussed; for even if we accept as true petitioner's testimony in relation to his disposition of the money paid to him by the corporation, we are faced with a condition in which it is apparent he has conspired—wittingly or unwittingly—with his corporation to defraud the government by falsely entering on the corporation's books the untrue statement that money had been paid out as commissions and, as such, was an expense of operation, when in fact it had not and was not, and as a result of which the lawful tax had been withheld. To admit this and grant the relief petitioner asks, is not the duty of a court of justice.

Order affirmed.