## J. H. ROBINSON TRUCK LINES, Inc. v. COMMISSIONER OF INTERNAL REVENUE.

No. 13155.

United States Court of Appeals
Fifth Circuit.

July 27, 1950.

Muckleroy McDonnold, San Antonio, Tex., for petitioner.

S. Dee Hanson, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Chief Counsel, Bur. of Int. Rev., and Rollin H. Transue, Sp. Atty., Bur. of Int. Rev., Washington, D. C., A. F. Prescott, Sp. Asst. to Atty. Gen., for respondent.

Before HUTCHESON, Chief Judge, and McCORD and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Petitioner is a large Texas trucking corporation, operating 140 trucks covering over 2000 miles in South Texas, with terminals at Houston, San Antonio, Corpus Christi, Laredo, and numerous other towns. Its president, J. H. Robinson, owns all but three of its shares of stock.

The Commissioner disallowed, and the Tax Court approved the disallowance of, deductions petitioner made for salaries and rents paid to its president in the years 1941, 1942, and 1943, and its income and

declared value excess-profits taxes were determined accordingly.

Here, pointing to the fact that it offered evidence fully and completely supporting the reasonableness of the deductions claimed and the Commissioner offered no evidence whatever, petitioner insists that the finding and judgment of the Tax Court is not only clearly erroneous but is without any support in the evidence and may not stand. We agree.

To support its claim that the salary it paid Robinson, as president, and the rents it paid him as landlord were reasonable, petitioner introduced the testimony of Robinson and of two other witnesses. Robinson testified positively, and without contradiction or impeachment, that the salaries paid him were in line with, that is were comparable to, salaries paid presidents of other similar lines.

As to the rents paid him, he testified that they were reasonable, indeed were less than rents the corporation paid others.

The other two witnesses testified positively and without equivocation, contradiction, or impeachment, that the salaries paid Robinson were in line with, that is the same as, salaries paid to presidents of similar companies, and that the rents paid to Robinson were reasonable and compared favorably with rents charged by others, indeed were considerably less than were paid by and to others in similar circumstances.

The Commissioner offered no evidence.

The Tax Court rejected all of the evidence of all of the witnesses, and upon a record containing no evidence whatever supporting them, sustained the Commissioner's determinations that the rents and salaries were excessive.

Upon settled principles, it.cannot do this, and in doing so, it erred. Crude Oil Corp. of America v. Com., 10 Cir., 161 F.2d 809, and the many cases it cites; Foran v. Com., 5 Cir., 165 F.2d 705; Grace Bros., Inc., v. Com., 9 Cir., 173 F.2d 170 at page 174; Howell Turpentine Co. v. Com., 5 Cir., 162 F.2d 319; Mayson Mfg. Co. v. Com., 6 Cir., 178 F.2d 115.

The judgment of the Tax Court is reversed and the cause is remanded with directions to allow the deductions claimed and redetermine the deficiencies accordingly.

McCORD, Circuit Judge, dissenting.

I cannot agree with my brothers that the decision of the Tax Court in this case is clearly erroneous, or that the record contains no evidence to support its findings. To the contrary, I am of opinion that the Tax Court was amply justified in rejecting the evidence offered by taxpayer, and in concluding that the deductions here claimed for rents and salaries were so excessive as to be manifestly unreasonable. In this connection, I quote the following excerpts from the Tax Court's opinion:

"We are unable to accept the rates paid for a few hundred feet of space in five communities as any index to the fair rental value of Robinson's several terminals as a whole. Although the evidence indicates that there were competitors in the south Texas area, petitioner made no effort to establish the rental paid by them for terminal facilities comparable in size and utility, or even to differentiate between the value of space in Houston and in the smaller cities and towns. Robinson admitted indeed that he never made any inquiry about the price at which similar space could have been rented from others. Being petitioner's shareholder, he had no adverse interest to protect as a lessor, and he offered no justification for the increase of rent from $34,800 in 1941 to $50,700 in 1942 except the general explanation that rents were rising. As the total investment in the terminals, acquired between 1934 and 1941, was only about $145,000, the rental for 1941 was 24 per cent of cost and that for 1942 and 1943 exceeded 33 per cent. Only very persuasive evidence could convince us that rentals bearing this relation to cost were reasonable in amount, and petitioner has not offered such evidence. It has not overcome the determination that the amounts disallowed were distributions of profits rather than a payment of rent. Cf. Limericks, Inc., 7 T.C. 1129, affirmed, 5 Cir., 165 F.2d 483."

With reference to the amounts claimed by Robinson as deductions for salaries, the Tax Court found as follows:

"As Robinson had fixed his salary at only $13,800 in 1940 when petitioner reported a net income of over $68,000, it would seem patently unreasonable that he should more than double it in 1941 and 1942 when the net income reported was less than $30,000, and certainly in 1943 when petitioner reported a net loss. The drastic increases in rent and salary during the taxable years materially reduced petitioner's net incomes, and give color to respondent's determination that a part of the amounts paid to Robinson under these guises were simply 'distributions of profits.' In 1942, for example, petitioner reported a net income of $27,405.83, and paid to Robinson $30,000 as salary and $50,700 as rent. We can not regard as justified sudden large increases in salary and rent for years succeeding 1942 which resulted in net losses for petitioner. The witnesses' categorical statements regarding the salary of corporate officers in competitive enterprises is not sufficiently persuasive to overcome the Commissioner's determinations, and we, therefore, sustain them."

In Commissioner of Internal Revenue v. Scottish American Investment Co., 323 U.S. 119, 123-124, 65 S.Ct. 169, 171, 89 L.Ed. 113, our Supreme Court held:

" * * * The Tax Court has the primary function of finding the facts in tax disputes, weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable. The Circuit Courts of Appeal have no power to change or add to those findings of fact or to reweigh the evidence. * * * The judicial eye must not in the first instance rove about searching for evidence to support other conflicting inferences and conclusions which the judges or the litigants may consider more reasonable or desirable." See also, Wilmington Trust Co. v. Helvering, 316 U.S. 164, 168, 62 S.Ct. 984, 86 L.Ed. 1352; Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346, rehearing denied 305 U.S. 669, 59 S.Ct. 56, 83 L.Ed. 434; Hel-

vering v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 84 L.Ed. 751.

This Court has held that the question of whether rents and salaries are reasonable or excessive is one of fact. Gem Jewelry Co. v. Commissioner, 5 Cir., 165 F.2d 991, certiorari denied 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770. The same rule obtains in other circuits. Ecco High Frequency Corp. v. Commissioner, 2 Cir., 167 F.2d 583; Hoffman Radio Corp. v. Commissioner, 9 Cir., 177 F.2d 264, 266; See also, Rule 52(a), Federal Rules of Civil Procedure. Moreover, in the very recent case of Carmack v. Commissioner, 5 Cir., 183 F.2d 1, we have just decided that "the Tax Court was not bound to believe or to accept the uncontradicted testimony of taxpayer and his wife, where such testimony patently appears highly improbable or manifestly unreasonable. O'Laughlin v. Helvering, 65 App.D.C. 135, 81 F.2d 269, 271; Rand v. Helvering, 8 Cir., 77 F.2d 450, 451."

It is without dispute that Robinson, the president of taxpayer, owned 99.6% of its stock. He further owned practically all of the terminal facilities used by the corporation. The only witnesses who testified in the case were Robinson, and two others who had been in his employ. When we come to measure the exorbitant salaries and rentals which Robinson, as president, charged to the corporation during the tax years in question, we find that he was receiving in 1943 more than its entire income, and causing the corporation to report a net loss. Under such circumstances, a reversal of this case in effect strikes down the case of Limericks, Inc., v. Commissioner, 5 Cir., 165 F.2d 483, 484, wherein this Court laid down the sound rule:

"The Tax Court was not bound to accept the form of this transaction between a corporation and its principal stockholder at face value, but was required to make a careful scrutiny to determine how much of the amount, if any, was actually dividends distributed in the guise of rent. The statute does not permit the deduction of an amount which is in no sense a legitimate business expense. The substance of the transaction is for the Tax Court to de-

742

termine upon the appraisal of all the facts, and its decision must be sustained if there is a rational basis for its conclusion."

We do violence to the considered judgments of this court and our Court of Last Resort in reversing the Tax Court in this case. Furthermore, we will thereby, in some sort, open the flood gates to those who will seek to minimize and avoid taxes due, by claiming as legitimate business expenses and deductions salaries and rents which are manifestly out of proportion to those which the statute was designed to allow. Title 26 U.S.C.A. § 23; Treasury Regulations 103, 111.

I respectfully dissent.