BOYETT et ux. v. COMMISSIONER OF INTERNAL REVENUE.

No. 13943.

United States Court of Appeals
Fifth Circuit.

April 21, 1953.

206

Geo. S. Atkinson and Tom B. Rhodes, Jr., Dallas Tex., John C. Box, Jr., Jacksonville, Tex., for petitioners.

George F. Lynch, Sp. Asst. to Atty. Gen., Ellis N. Slack, Acting Asst. Atty. Gen., Mason B. Leming, Acting Chief Counsel, Bureau of Internal Revenue, Rollin H. Transue, Sp. Atty., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and STRUM and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This matter is before us on three consolidated petitions filed by James L. Boyett and his wife, Velora Boyett, to review decisions of the Tax Court which sustained, with modifications, deficiencies in petitioners' income taxes assessed by the Commissioner, with fraud penalties, for the years 1942 through 1947.

Two fundamental questions are presented: (1) Whether or not the evidence before the Tax Court supports the Commissioner's determination that, based upon receipts and disbursements, the taxpayers failed to report their true income for the years in question; and (2) whether or not the fraud penalties are justified. On the first question, the burden is upon the taxpayers; on the second it is upon the Commissioner.

Petitioners filed no returns prior to 1941. For the years 1942, 1943 and 1944, they filed joint returns, on a cash basis, as husband and wife. For the years 1945, 1946 and 1947, each filed a separate return. The Commissioner determined that for each of the said years, 1942 through 1947, petitioners realized substantial additional income, particularly for the years 1943, 1944 and 1946, and imposed a deficiency assessment accordingly. A fraud penalty of 50% was also imposed for each of the years 1942 through 1947. The Tax Court remitted the penalty as to Velora Boyett for the years 1945, 1946 and 1947, when separate returns were filed, but sustained the penalty against her for the years 1942, 1943 and 1944, when joint returns were filed. In other respects the Tax Court, with minor modifications, sustained the Commissioner, and that decision is here for review.

The principal controversy centers around six deposits of currency during 1943, 1944 and 1946, aggregating $33,650, and a cashier's check for $1,000, acquired in 1946, which petitioners contend arose from loan re-payments, from previously accumulated savings, or acquisitions therefrom. Both the Commissioner and the Tax Court found that these funds were taxable income. The deficiency assessments are based primarily upon these deposits.

During the tax years in question, petitioner James L. Boyett was a successful dentist in Jacksonville, Texas, a town of about 8,000 to 10,000 inhabitants, where he had practiced since 1934, having practiced in other towns since 1927. Velora Boyett had an income from school teaching which ranged from $1,000 to $1,600 per year.

Except for a few small deposits in 1935 and in 1946 and 1947, petitioner James L. Boyett kept his bank accounts in the names

of other persons. He testified that this was done because of an unsatisfied judgment against him. His principal business account from 1935 until the time of the hearing before the Tax Court, was in the name of "Ann Newman," who was petitioner's office assistant from 1935 to 1940. After she left petitioner's employ in 1940, he continued to keep the bank account in her name, although the funds were exclusively the property of James L. Boyett. Deposits in that account were frequent and of substantial amounts during the entire period in question. Most of the deposits were for an even $100, or in other "even" amounts.

Petitioner also kept two other accounts in the name of "Harold Boyett." From 1943 through 1946, the "Harold Boyett" accounts, in two banks, received deposits of such substantial sums as $2,750, $2,400, $2,500, $6,000 (March 1, 1944), $2,000, $1,-000, and $18,000 on May 17, 1946, all of which aggregated $34,650. This was admittedly petitioner's money. From 1936 through the tax years in question, it also appears that petitioner consistently followed the practice of cashing many of the checks given him by patients, instead of depositing them in the bank, carrying the cash proceeds in his pocket. Petitioner usually made the bank deposits himself, but kept only fragmentary records of his earnings.

From time to time, petitioner James L. Boyett has rented nine bank safe deposit boxes. At the time of the hearing before the Tax Court he had two such boxes, one rented on May 5, 1941 the other in 1942. The instructions to the bank as to the first box were to admit "Mrs. Boyett as deputy." On the second, the instructions were "No information to anyone."

The Tax Court found that, assuming a figure of $3,000 per year for petitioners' combined living expenses, petitioners disbursed, from 1942 through 1947, in known cash investments, chiefly bonds and real estate, payments on loans, and for personal living expenses, aggregate sums which far exceeded their reported net income, and in most years exceeded their reported gross income. In 1942, petitioner James L. Boyett deposited $8,902.36 in the "Ann New-man" account, which was $1,202.36 in excess of his gross business income reported for that year.

When asked to explain where these funds came from, particularly the large deposits in the "Harold Boyett" accounts above mentioned petitioner's explanation was that from 1904 to 1910 (which would be between the ages of 12 and 18 years, petitioner having been born in 1892), he accumulated $26,000 to $28,000 in cash from the sale of cattle, peaches, and cord wood from the family farm. Of this amount petitioner claims he gave his uncle, J. W. Boyett, $23,000 to $24,000 for safekeeping. This sum, petitioner claims, was augmented by another $3,000 to $5,000 by 1917, derived from profits realized in the sale of a confectionery store owned by petitioner, from the operation of a pool hall, and from the sale of drugs and chemicals. Petitioner claims to have accumulated another $5,000 to $6,000 from gambling activities while serving in the Army, so that by 1919 petitioner had accumulated some $34,000 to $36,000, all of which he turned over to his uncle, J. W. Boyett, now deceased, for safekeeping. After the uncle's health began to fail in 1939, petitioner claims to have turned the money over to his brother, W. E. Boyett, who kept it until about the time it was deposited in the bank. In the latter portion of his testimony petitioner is corroborated by his brother, but the brother's testimony contains inaccuracies and contradictions.

Petitioner's testimony, and that of his witnesses, is that his uncle and brother kept this large sum of money, all in paper currency of large denominations, in an old thermos jug, which the uncle concealed under his home while he had the money. The Tax Court rejected this explanation as fantastic, holding that the income of petitioners for the tax years in question was substantially as determined by the Commissioner; that the joint returns filed by petitioners for the years 1942 through 1944, inclusive, were fraudulent and with intent to evade the tax, and that the individual returns of James L. Boyett for the years 1945 through 1947, inclusive, were similarly fraudulent. The Tax Court,

however, exonerated Velora Boyett of fraud in her separate returns for 1945 through 1947. Petitioners vigorously contend that in reaching this conclusion the Tax Court arbitrarily and erroneously rejected all explanatory testimony offered by petitioners, while unjustifiably accepting as true that offered by the Commissioner.

The fact finding authority in these controversies is the Tax Court. As a reviewing court, we are not authorized to reverse the fact findings of that court unless we can say they are clearly erroneous. This is true even in cases where, as original fact finders, we might interpret the facts differently. Carmack v. Commissioner, 5 Cir., 183 F.2d 1; Halle v. Commissioner, 2 Cir., 175 F.2d 500; Hoefle v. Commissioner, 6 Cir., 114 F.2d 713; O'Dwyer v. Commissioner, 5 Cir., 110 F.2d 925; 26 U.S.C.A. § 1141(a), as amended by sec. 36 of the Act of June 25, 1948. See also Fed.Rules Civ.Proc. rule 52(a), 28 U.S. C.A.

In this instance, however, our view is that the Tax Court's findings are well supported by the evidence. The Tax Court not only may, but should, base its findings on the testimony it believes to be true, rejecting after due consideration that which it believes is false. Although positive and uncontradicted testimony as to a particular fact will ordinarily be accepted, a court may reject testimony which, as here, is inherently improbable or manifestly unreasonable, even though no contradictory testimony is offered. Greenfeld v. Commissioner, 4 Cir., 165 F.2d 318; Carmack v. Commissioner, 5 Cir., 183 F. 2d 1; Halle v. Commissioner, 2 Cir., 175 F.2d 500; O'Laughlin v. Helvering, 65 App.D.C. 135, 81 F.2d 269; Cohen v. Commissioner, 2 Cir., 148 F.2d 336; Quock Ting v. United States, 140 U.S. 417, 11 S. Ct. 733, 35 L.Ed. 501; Rand v. Helvering, 8 Cir., 77 F.2d 450.

We agree with the Tax Court that the "jug money" explanation is replete with discrepancies and implausibilities. One such discrepancy is that although Boyett claimed to have saved substantially all the $34,000 by 1927, the banker who handled the deposit of $18,000 of this money testified that the entire amount was in small sized bills which were not issued until 1928 and thereafter and none of it was in the large sized bills in use prior to 1928. The banker further testified, however, that the currency smelled old and musty. Still another inconsistency is, that although Boyett claims to have had this large sum of money lying idle in the safekeeping of his uncle and brother, he repeatedly borrowed money in substantial sums from the banks, paying high rates of interest therefor, in carrying on his business and investment transactions, and made several purchases of real estate on the monthly payment basis, paying high interest on the deferred payments.

Petitioner claims that he entrusted the money to his uncle and brother because he had a fear neurosis, and distrusted banks. Yet he had rented nine bank safety deposit boxes during his life time, and was renting two of them during the years here in question. He also deposited many thousands of dollars in the banks of Jacksonville, Texas, where he lived, during the years in question. But, according to petitioner, the $34,000 entrusted to his uncle for "safekeeping" was stored in an old thermos jug, under the uncle's home, in Winnfield, Louisiana, well over 100 miles away.

There are many other discrepancies and improbabilities in the evidence, too lengthy to recount here. We think the Tax Court was justified in rejecting petitioners' explanation as "unreliable and unsatisfactory."

Where, as here, the records kept by the taxpayer are manifestly inaccurate and incomplete, the Commissioner may look to other sources of information to establish income, and may take into account, as *prima facie* evidence of income, bank deposits made by the taxpayer during the years in question. There is ample evidence to support the deficiencies in question. Kenney v. Commissioner, 5 Cir., 111 F.2d 374; Halle v. Commissioner, 2 Cir., 175 F.2d 500; O'Dwyer v. Commissioner, 5 Cir., 110 F.2d 925; Hague Estate v. Commissioner, 2 Cir., 132 F.2d 775; Hoefle v. Commissioner, 6 Cir., 114 F.2d 713.

209

Circumstances above stated, and many others appearing in the evidence, fully justify the fraud penalties imposed by the Commissioner, as modified by the Tax Court as to Velora Boyett. Indeed, accepting the facts to be as justifiably found by the Tax Court, the conclusion of fraud is inescapable. The circumstances are certainly not consistent with inadvertence or innocent mistake. Even disregarding the so called "jug money" transactions, there is still evidence of fraudulent intent on the part of James L. Boyett. Although the fraud appears to have been his alone, the consequences thereof also attach to his wife for the years 1942 through 1944, when joint returns were filed. Howell v. Commissioner, 10 T.C. 859, affirmed 175 F.2d 240. For the years 1945 through 1947, when separate returns were filed, the Tax Court properly relieved the wife of fraud penalties, as there was no evidence that she attempted to conceal any of her own income for those years.

The decisions appealed from are Affirmed.