Mary Ruark v. Commissioner.
Ruark v. Comm'r
Docket No. 3211-66.
United States Tax Court
T.C. Memo 1969-48; 1969 Tax Ct. Memo LEXIS 247; 28 T.C.M. (CCH) 265; T.C.M. (RIA) 69048; March 13, 1969, Filed *247 Petitioner transportation for migratory laborers to nearby orchards and farms. On her income tax returns for 1961 to 1964 she reported net losses or small net income. She deposited over $30,000 in savings accounts and accrued more than $8,000 in interest thereon in these years. Held: (1) The amounts deposited in savings accounts and the interest accrued thereon are taxable as income to petitioner. (2) The underpayments of tax were due to fraud. (3) The statute of limitations does not bar the deficiency for 1961. Joseph H. Trethewey and Robert Earl Smith, 1418 IBM Bldg., Seattle, Wash., for the petitioner. Lee A. Kamp, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax and additions to tax under section 6653(b) of the Internal Revenue Code of 1954 for fraud for the calendar years 1961 through 1964 as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b)
1961
$ 662.00
$ 331.00
1962
1,642.15
821.08
1963
3,245.11
1,622.55
1964
1,072.69
536.35
By amended answer respondent claimed increased deficiencies and additions to tax for such years as follows: 1961
$1,528.55
$ 764.28
1962
268.06
134.03
1963
418.24
209.13
1964
343.23
171.61
The issues *248 for decision are whether petitioner had unreported income in the taxable years in the amounts determined by respondent; whether any part of any underpayment of tax for any such year was due to fraud; and whether the assessment and collection of deficiencies for 1961 is barred by the statutory period of limitations. Findings of Fact The stipulation of facts and the exhibits attached thereto are incorporated by reference. The petitioner was a resident of Yakima, Washington during the years 1961 through 1964 and at the time the petition was filed. She filed individual Federal income tax returns for such calendar years and on the cash basis with the district director of internal revenue at Tacoma, Washington. Petitioner was born in Bridger, Montana, in 1907. She was one of seven children. Her maiden name was Korinko. Her father was a coal miner, her mother a housewife. She had an eighth grade education. In 1925 she married Angelo Rogers, a carpenter employed at Pasco, Washington. They were divorced in 1934. Petitioner married Clyde Ruark in 1934. Ruark worked in a cannery, did trucking and operated a farm near Washburn, Missouri. Petitioner worked on the farm. Ruark and petitioner moved *249 to the State of Washington in about 1938. Petitioner there worked as a cook or in a cannery or in fields. In 1940 Ruark was injured and suffered a physical disability. He received a disability pension of $99.19 per month from the State of Washington. Petitioner and Ruark were divorced in 1949. In the divorce proceeding Ruark alleged that petitioner had possession of the home, furniture, automobile and cash in an amount exceeding $20,000; that this was community property; and that she had withdrawn cash from banks in Yakima and had secreted the money. Petitioner married Albert Schaufler in 1950. She left him after about one year, 266 and secured a divorce from him in 1960. She was employed from 1952 to 1959 as a cook, waitress or cannery worker at wages of less than $3,000 each year. Petitioner bought a restaurant on Front Street in Yakima in 1959 and has operated it through the taxable years under the name of "Mary's Cafe." It is near a railroad station and several fruit packing plants. Petitioner's customers include transient or migratory workers employed in the orchards or farms near Yakima. She owned a pickup truck and provided transportation for a number of laborers from the cafe *250 to the fields during the months when such labor was wanted, from about March to October. Petitioner lived in a small four-room house she acquired in 1948 at a cost of $1,500. The house was heated by a wood-burning stove. At one time she rented part of the house to a tenant for $35 per month. Petitioner opened savings accounts at various times at different banks and savings or loan companies. Petitioner had an account with the Seattle First National Bank, Yakima Valley Branch, account No. X2684, in the name of Mary E. Ruark. This account was opened in 1950 with a deposit of $8,900. It was transferred to dormant status in December 1963 and until after 1964. Petitioner opened a savings account in the National Bank of Commerce of Seattle, Yakima Branch, under the name of Mary E. Schaufler in 1952, Account No. X4545. The account was closed February 17, 1959, and the proceeds, $7,088.72, were transferred to Account No. X3974 in the same bank under the name of Mary E. Korinko. Petitioner opened an account in the West Side National Bank, Yakima, East Side Branch, Account No. XXXX, in 1952, under the name of Mary E. Schaufler. On March 22, 1957, the balance of $9,591.68 was transferred to Account *251 No. XXXX in the same bank under the name of Mary E. Ruark. The account became dormant in June 1963 until after 1964. Petitioner opened an account in the West Side National Bank, Yakima, in the name of Mary E. Schaufler in 1952, Account No. X4198. In 1957 the number was changed to 600-024-0897, and is referred to herein as No. 0897. Petitioner opened an account, No. X9582, in the West Side National Bank, Yakima, in the name of Mary E. Schaufler in 1958. The number of this account was changed to XXX-XXX-8241. This is referred to hereinafter as No. XXXX. Petitioner opened a savings account in the Liberty Savings and Loan Association, Yakima, in September 1961 under the name Mrs. Mary E. Ruark. In 1962 the balance was transferred to Account No. X2553. This is referred to herein as No. 32553. During the year 1961, petitioner made the following currency deposits to Savings Account No. X3974 at National Bank of Commerce, Yakima: Date
Deposits
2/15
$ 700.00
3/29
739.00
4/21
355.00
5/25
615.00
6/2
150.00
7/14
1,000.00
7/28
520.00
8/30 1,300.00
Total
$5,379.00
During the years 1961-1964, petitioner made the following currency deposits to Account No. X2553: Year
Deposits
Total
1961
9/26 (opening of account)$1,224.00
11/3 1,370.00 $ 2,594.00
1962
2/19
500.00
4/23
1,000.00
7/24
1,200.00
10/1
2,544.83
11/13 1,200.00 $ 6,444.83
1963
1/22
400.00
4/2
1,100.00
4/24
635.00
6/12
965.30
7/1
810.00
7/24
968.00
8/23
1,110.00
9/12
1,300.00
10/2
1,000.00
10/25
1,330.00
11/8
1,000.00
12/20 350.00 $10,968.30
1964
1/27
100.00
3/3
473.50
4/13
660.00
4/24
50.00
7/10
1,100.03
8/14
725.00
10/26
773.00
12/4 780.00 $ 4,661.53
Total
$24,668.66
*252 267 For the years 1951 through 1964, the year-end balances in the aforementioned savings accounts were as follows: No. X2553
No. X2684
Liberty
Seattle
No. XXXX
No. XXXX
No. XXXX
No. X3974
Dec.
Savings &
First Nat'1
West Side
West Side
West Side
Nat'1 Bank
31
Loan Assn.
Bank
Nat'1 Bank
Nat'1 Bank
Nat'1 Bank
of Commerce
1951
$ 9,109.75
1952
5,000.00
$ 343.98
$ 5,007.65
$ 5,000.00
1953
5,000.00
697.96
5,007.65
5,031.25
1954
5,093.96
3,591.81
5,007.65
5,093.99 1955
5,100.50
6,286.76
5,007.65
5,132.37
1956
6,881.35
8,315.13
5,210.97
5,235.52
1957
8,129.28
10,122.81
5,342.04
5,367.21
1958
10,195.80
$ 845.58
10,125.00
5,476.41
6,659.72
1959
10,478.10
868.98
10,405.32
5,628.02
12,987.60
1960
10,794.82
895.23
10,719.80
5,798.12
21,891.80
1961
$ 2,615.38
11,121.69
922.32
11,044.39
5,973.67
27,996.73
1962
9,258.91
11,516.02
95 4.97
11,436.00
6,185.44
28,989.53
1963
20,771.25
12,024.36
988.83
11,838.53
6,349.22
30,017.53
1964
26,352.23
12,450.61
997.48
11,956.94
6,404.78
33,101.65
During the years 1951 through 1964, petitioner's savings accounts showed the following yearly increases: Outstanding
Balances in
Yearly
Dec. 31
Savings Accounts
Increase
1951
$ 9,109.75
1952
15,351.63
$ 6,241.88
1953
15,736.86
385.23
1954
18,787.41
3,050.55
1955
21,527.28
2, 739.87
1956
25,642.97
4,115.69
1957
28,961.34
3,318.37
1958
33,302.51
4,341.17
1959
40,368.02
7,065.51
1960
50, 099.77
9,731.75
1961
59,674.18
9,574.41
1962
68,340.87
8,666.69
1963
81,989.72
13,648.85
1964
91,263.69
9,273.97
*253 268 During the years 1961-1964, petitioner earned the following interest income for the following savings accounts: 1961
1962
1963
1964
Korinko No. X3974 - Nat'1 Ban of Commerce
$1,083.12
$ 750.21
$ 992.80
$1,028.00
$1,083.12
Ruark No. 32684 - Seattle First Nat'l Bank
326.87
394.33
408.34
426.25
Schaufler Nos. 19582, 600-195-8241 - West Side Nat'l Bank
27.09
32.65
33.86
29.15
Ruark Nos. 1045, 3300 - West Side Nat'l Bank
324.59
391.61
405.53
480.72
Schaufler Nos. 14198, 600-024-0897 - West Side Nat'l Bank
175.55
211.77
163.78
55.56
Ruark Nos. 31947, 32553 - Liberty Savings and Loan Assn. 21.38
198.70
544.04
919.45
Totals
$1,625.69
$2,221.86
$2,583.55
$2,994.25 Petitioner did not report any interest income on her 1961 and 1962 income tax returns. These were signed "Mary Schaufler." Petitioner's returns for 1963 and 1964 were signed "Mary Ruark." Petitioner reported on her 1963 income tax return interest income in the amount of $841.68 from National Bank of Washington (formerly the West Side National Bank). Petitioner reported on her income tax return for 1964 the following interest income from the following banks: National Bank of Washington
$ 53.56
National Bank of Commerce
1,083.12
National Bank of Washington
35.06
Liberty Savings & Loan Assn 919.45
Total
$2,091.10[sic]
Petitioner *254 reported on her income tax returns the following gross receipts, gross profits, net profits or (loss), and taxable income from her restaurant known as Mary's Cafe: Net Profits
Year
Gross Receipts
Gross Profits
(Loss)
Taxable Income
1961
$7,930.15
$ 2,291.16
[85.32)
None
1962
8,596.86
3,406.08
250.30
None
1963
8,648.04
3,585.94
189.66
$31.75
1964
7,206.50
3,075.73
(765.18)
377.20
Petitioner did not report income from any source other than interest from savings accounts and from the restaurant in these returns. In her income tax returns for the years 1953 to 1957, petitioner reported gross income of less than $3,000 each year from wages. She filed a delinquent return for 1958 reporting a tax of $25.90. She filed a return for 1959 reporting wages of $628.00, and a loss from operation of the cafe, and claiming a refund. There is no record that she filed a return for 1960. During the taxable years petitioner ate meals at her restaurant. The cost of these meals amounted to $50 per month. Petitioner concedes that the profits of the cafe should be increased by $600 per year on this account. Petitioner failed to report interest income in amounts as follows: 1961
$1,625.69
1962
2,221.86
193
1,741.87
1964
903.15
The notice of *255 deficiency was dated March 14, 1966. The deposits to petitioner's savings accounts constituted taxable income to petitioner in the amount of $7,973.00 for the year 1961, $6,444.83 for the year 1962, $10,968.30 for the year 1963, and $4,661.53 for the year 1964. Petitioner omitted from the gross income reported on her return for 1961 an amount properly includable therein which was in excess of 25 percent of the gross income stated in the return. The 269 petitioner's return for 1961 was false and fraudulent with intent to evade tax. At least a part of the underpayment of tax for each of the taxable years 1961 to 1964, inclusive, was due to fraud. Opinion Petitioner operated a restaurant in the fruit packing area of Yakima. In her income tax returns for the years 1961 to 1964 inclusive, she reported annual gross receipts of from $7,206.50 to $8,648.04 and net losses or small profits, the largest profit amounting to $250.30. For 1961 and 1962 she reported no interest income. For 1963 she reported interest in the amount of $841.68 and for 1964 interest in the amount of $2,091.10. During these four years petitioner was owner of six savings accounts. The balances in these accounts exceeded *256 $50,000 at the beginning of 1961. Petitioner made frequent deposits in currency to two of these accounts, depositing more than $30,000 in these years. The accounts earned interest in amounts exceeding $8,000. The balances at the end of 1964 amounted to more than $90,000. Respondent determined (1) that the deposits in currency made by petitioner to the savings accounts in the taxable years represented taxable income, (2) that the interest accrued to her credit on such accounts was taxable as income, and (3) that the net profit from her business should be increased by $600 per year on account of her meals taken at the restaurant. Petitioner concedes the adjustment of $600 per year for meals. Petitioner also concedes that the interest accrued on her savings accounts was taxable as income. However, petitioner disputes the amount of interest as computed by respondent, contending that the only taxable interest was the amount actually entered on the accounts as of the end of each year. Some of the accounts were dormant at the end of 1963 or 1964 or both years, and no interest was credited to them until after 1964. Respondent treated a part of the interest credited ther-after as earned in *257 1963 or 1964. Under the doctrine of constructive receipt the petitioner is properly charged with interest earned on her accounts even though not posted to her credit. Petitioner could have drawn upon these accounts and received the interest earned in each taxable year. There is no evidence that her right to collect the interest was subject to any substantial restriction. The respondent was correct in treating the interest earned as taxable. Income Tax Regs., Section 1.451-2. Petitioner contends that the deposits which she made to the savings accounts in the taxable years did not constitute taxable income. Petitioner also contests the additions to tax for fraud, and contends that the statute of limitations bars the deficiency determined for 1961. The principal issue is whether the amount of petitioner's deposits to two of her savings accounts in the taxable years represents income currently taxable to her. The respondent so determined and this determination is presumptively correct. The burden is upon the petitioner to prove that respondent's determination was erroneous. Cefalu v. Commissioner, 276 F. 2d 122 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court, and cases cited *258 therein. Petitioner argues that respondent, having filed an amended answer claiming increased deficiencies, has the burden of proof under Rule 32, Tax Court Rules of Practice, [1] *259 and should have been required initially to go forward with the evidence. The original deficiencies were computed principally upon the inclusion as taxable income of interest additions to five savings accounts and deposits to one of them. After the notice of deficiency was mailed, respondent's agents discovered another savings account owned by petitioner under the name of Mary E. Korinko, to which she had made deposits in 1961 and to which interest was credited in the years 1961-1964. The amended answer alleged the facts necessary to establish the claim for additional deficiencies attributable to the additional income shown by this account. These facts were included in the stipulation of facts filed at the hearing. The facts having been stipulated, there was no burden on the respondent to go forward with the evidence. The amended answer did not raise a new issue, nor did it shift the burden of proof from the petitioner with respect to the issues raised in the petition. Petitioner's contention is that she had a cash hoard aggregating some $30,000 before 1961. She testified that she had this cash 270 in a steel box in her basement, and that from time to time she took currency to the bank or the savings and loan office from this box and made deposits. Her testimony is that she received $10,000 from her mother in 1925 as a wedding present on her marriage to Rogers, that she saved money during the following years and that she had accumulated $65,000 at the time of her divorce from Ruark in 1949, and was hiding this cash from him. She said she had the steel box since 1925 and accumulated cash until 1949. Petitioner introduced in evidence an affidavit made by Ruark in the course of petitioner's action in 1949 against Ruark seeking divorce. Ruark alleged that his wife had possession of the home, furniture, automobile, and cash in an amount exceeding $20,000, all of which was community property and that she had removed such money from *260 Yakima banks and secreted it. Petitioner did not show what action the State Court took with reference to the disposition of the money or property of the parties. Petitioner's story is incredible. First, it is highly improbable that a gift of $10,000 could have been made to petitioner on her marriage at age 18, from her mother, wife of a coal miner with five children to provide for at that time. Next, it is most unlikely that any such sum in cash could have been retained intact from 1925 to 1960 without being used or invested or deposited in a bank, during a life involving three marriages, operation of a trucking business and a farm in Missouri, a move to Yakima, and the costs of caring for Clyde Ruark until 1949 after his disabling injury in 1940. Ruark's affidavit indicates that whatever money she had was kept in banks until she withdrew it to hide it from him. In 1950, after the divorce from Ruark, petitioner began depositing cash in savings accounts with a deposit of $8,900 in the Seattle First National Bank. She opened three new accounts in 1952, and made frequent deposits to them. By the end of 1960 she had five accounts and the balances exceeded $50,000. That she retained $30,000 *261 in cash in the steel box all this time is also unbelievable. She testified that she wanted her money to draw interest. Whatever cash she may have held secreted in 1949 was, undoubtedly, entirely deposited in savings accounts by the beginning of 1961. The respondent recognizes the requirement imposed in a case of this nature under the principle stated in Holland v. United States 348 U.S. 121 (1954), to show a "likely source" from which the unreported income may have been derived or to negate all possible sources of nontaxable income. United States v. Massei 355 U.S. 595 (1958). Respondent points to the income from the restaurant and from hauling farm laborers to the fields and orchards as providing a likely source of the income represented by the deposits to petitioner's savings accounts. Petitioner failed to keep adequate records of her receipts and expenditures. One of respondent's agents who conducted an audit in 1960 of petitioner's returns for 1957-58-59 testified that her only record at that time was a small notebook with single entries in pencil. At the time of the investigation in 1965 of petitioner's returns for 1961 to 1964 she produced no records, but said they had been *262 stolen. There is evidence of a burglary at her cafe in April 1963 but no report of a theft of records at that time. No records were produced for the remainder of 1963 nor for 1964. In the absence of records, respondent's agents sought to determine petitioner's income by the bank deposit method. This method assumes that most assets are derived from a taxable source and that when this is not the fact, the taxpayer is able to explain the true source. During the investigation in 1965 of petitioner's returns for these taxable years she made certain statements concerning the source of the cash deposited in the Liberty Savings & Loan account. At one time she denied the existence of the account. Later she admitted the account and said the deposits came from rental of a farm in Missouri and the transporting of farm workers from Yakima to the farms and orchards during the season when migratory workers were employed. The revenue agent's statement that petitioner said the money came from hauling farm laborers to the fields was corroborated by petitioner's accountant who was present at the interview. Still later petitioner denied that the money came from transporting laborers and stated that it *263 came from cash retained in a trunk. In the six years of petitioner's operation of Mary's Cafe, 1959 through 1964, she reported a net profit in two years of $189 and $250, and operating losses for three years. For 1960 there is no record that she filed a tax return. Except for $500 in 1959, she made no withdrawals from her savings accounts during this period, but deposited 271 over $44,000 in them. The balances increased by more than $57,000. Petitioner argues that the income from the cafe and from hauling laborers to the fields could not possibly have been sufficient to account for the money deposited in the savings accounts in the years 1961 to 1964. She says that the restaurant located near the fruit packing plants and migratory workers' area is frequented by people who could not afford expensive meals and there were competing restaurants in the same block. Although petitioner told the agents in 1965 that she charged the migratory workers $2 per day for transportation to the fields, she testified at the hearing that the charge was only $1 per day and included lunch and that she began to provide transportation only in 1963 as she did not own a car or truck earlier. We agree with respondent *264 that the likely source of the money deposited in the savings accounts in the taxable years was income from the cafe and from transporting laborers to the farms and orchards. We find the cash hoard explanation unbelievable. For comparable claims see Boyett v. Commissioner 204 F. 2d 205 (C.A. 5, 1953), affirming a Memorandum Opinion of this Court Arlette Coat Co. 14 T.C. 751 (1950); Cefalu v. Commissioner, supra.The petitioner has not borne the burden of proving that respondent's determination in this respect was erroneous. Respondent has the burden of proof to establish fraud. Section 7454. [2]
Respondent contends that the substantial deposits to savings accounts at a time when petitioner was reporting small amounts of net income, or losses, from her business are convincing evidence of fraud. In the four taxable years 1961-1964 she reported a net operating loss from her business and $2,932.78 in income as interest, *265 while making deposits to savings accounts in an amount exceeding $30,000 and accruing interest in excess of $8,000. A pattern of reporting losses or insignificant amounts of income and at the same time investing large amounts of cash without a credible explanation of a nontaxable source of the money is convincing evidence of fraud. Arlette Coat Co., supra. Rogers v. Commissioner, 111 F. 2d 987 (C.A. 6, 1940), affirming 38 B.T.A. 16 (1938). In addition to the foregoing facts it is noted that petitioner concedes that she omitted to report interest income of $1,625.69 in 1961 and $2,221.86 in 1962 which accrued in her savings accounts, and that she reported only $841.68 out of more than $2,000 of interest rhich accrued in 1963. She did not report all of the amount which was earned in 1964. She explained that her bookkeeper told her she was required to report only amounts which the bank reported to the Government. Petitioner was fully aware that she had income from interest on these accounts. She was not entitled to rely upon the advice of an unqualified bookkeeper. Respondent has carried the burden of proving that a part of the underpayment of tax in each year was due to fraud. The statute *266 of limitations does not bar the deficiency for 1961. Since petitioner's return for 1961 has been shown to be false and fraudulent with intent to evade tax, the tax may be assessed at any time. Section 6501(c). [3] In addition, it is shown that petitioner omitted from the gross income reported in the return ($7,930.15) at least $7,973 of deposits which amount was properly includable therein and which is in excess of 25 percent of the gross income stated in the return. Under section 6501 (e), [4] *267 the tax may be assessed within six years after the return was filed. Decision will be entered under Urle 50. 272 Footnotes
1. RULES OF PRACTICE TAX COURT OF THE UNITED STATES. RULE 32. BURDEN OF PROOF The burden of proof shall be upon the petitioner, except as otherwise provided by statute, and except that in respect of any new matter pleaded in his answer, it shall be upon the respondent.↩
2. SEC. 7454. BURDEN OF PROOF IN FRAUD AND TRANSFEREE CASES. (a) Fraud. - In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate. * * *↩
3. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. * * * (c) Exceptions. - (1) False Return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. * * * ↩
4. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. * * * (e) Substantial Omission of Items. - Except as otherwise provided in subsection (c) - (1) Income Taxes. - In the case of any tax imposed by subtitle A - (A) General Rule. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * *