ERNEST N. DELANEY AND MARJORIE M. DELANEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Delaney v. Commissioner
Docket No. 14011-81.
United States Tax Court
T.C. Memo 1982-666; 1982 Tax Ct. Memo LEXIS 79; 45 T.C.M. (CCH) 134; T.C.M. (RIA) 82666; November 18, 1982. Ernest N. Delaney, pro se. James A. Nelson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent *80 determined a deficiency in the amount of $39,493.95 in petitioners' Federal income tax for 1977 and an addition to tax in the amount of $1,974.70 under section 6653(a). [1] After concessions by respondent, the following issues remain for decision: 1. Whether petitioners had unreported income of $43,373 in the form of gold coins valued at $43,068 and unexplained bank deposits of $305; [2]
*81 2. Whether petitioners are entitled to a deduction in the amount of $3,068 as an ordinary and necessary business expense under section 162(a) for the cost of gold purchased for use in petitioner Ernest N. Delaney's dental practice; and 3. Whether petitioners' understatement of income for 1977 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT At the time they filed their petition, petitioners Ernest N. Delaney (petitioner) and Marjorie M. Delaney, husband and wife, were legal residents of Spokane, Washington. They filed their joint Federal income tax return for 1977 with the Internal Revenue Service Center, Ogden, Utah. They used the cash receipts and disbursements method of reporting their income. 1. Swiss Coins
In August 1977, petitioner received gold coins having a fair market value of $43,068 from Zurich, Switzerland (hereinafter referred to as the Swiss coins). The United States Customs Service (Customs) notified the Internal Revenue Service (IRS) that the coins had passed through Customs on August 20, 1977. Petitioner collected coins as a hobby, and the Swiss coins had numismatic *82 value. In his dealings with the IRS and later at the trial in this case, petitioner produced no documentation or other verifiable evidence as to the source of funds used to acquire these Swiss coins. He did not substantiate his statement that the acquisition triggered no taxable event but, instead, relied on alleged Fifth Amendment rights. Before the Court, he established nothing concerning the coins' acquisition. In the notice of deficiency, respondent determined that, because petitioner "refused to establish that these assets [the Swiss coins] were acquired from funds which have been reported as taxable income or from non taxable sources," he received income in 1977 measured by the coins' fair market value. 2. Gold Krugerrands
In December 1977, petitioner purchased South African gold krugerrands in BU condition [3] from Rene Baxter & Company, gold coin brokers.This purchase is evidenced by two separate invoices both dated December 15, 1977, one for $1,193 and the other for $1,875, for a total purchase price of $3,068. The invoices bear stamps indicating that payments were received on December 20, 1977. *83 Petitioner used gold in his dental practice for various purposes including work on bridges, inlays, and partial dentures. Unlike many dentists, he performed much of his laboratory work in his own well-equipped laboratory.He melted down gold bullion and mixed appropriate alloys to make the proper types of gold for the particular jobs. Because gold krugerrands contain exactly 1 ounce of pure gold and can be purchased at only approximately 3 percent above the price of gold on the market, petitioner found them a convenient as well as economical source of gold for his business needs. In purchasing krugerrands for his dental work, petitioner dealt with various companies, including RX Jeneric Gold Company (Jeneric). Jeneric sent to him, as well as to other dentists, an advertisement describing the benefits of using the "RX Krugerrand Casting System," a "proven money saving system whose time has come." This advertisement offers for purchase krugerrands and "RX Jeneric Alloy Kits," which can be purchased together or separately; by mixing the contents of the "kits and the krugerrands," the advertisement states, "the results will be an 18K dental casting alloy." Petitioner obtained his *84 dental gold krugerrands from Jeneric and from other sources, including Rene Baxter & Company, depending on the companies' prices at the time he wished to buy the gold. When his gold supply began to dwindle, petitioner replenished it by ordering a new supply, which he used in the following months. Respondent determined that this purchase of kruggerands was not deductible under section 162(a) because petitioner had not shown that this expense was "ordinary and necessary" or that the sum was expended for the purpose designated. Respondent further determined that petitioner was liable for an addition to tax for negligence or intentional disregard of the law under section 6653(a). OPINION 1. Swiss Coins
Petitioner argues that he paid for the Swiss coins with tax-paid or tax-exempt moneys and that the receipt of these coins thus does not constitute taxable income to him. He produced no documentation of any kind concerning these purchases, and his testimony on this issue was vague and uncorroborated. We hold that he has failed to carry his burden of proof, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). We are compelled to sustain respondent's determination *85 that the receipt of these coins in circumstances that are not explained constituted income to him in the amount of their fair market value, $43,068. In the absence of an adequate explanation of the source of the funds used to acquire these gold coins, they are analogous to unexplained bank deposits which are prima facie evidence of income. See Boyett v. Commissioner,204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977), and cases cited. Petitioner testified that he purchased the Swiss coins with cashier's checks, but he stated he could not remember the number of the checks used to buy them. Not only was he unable to produce copies of any of the checks or any other records reflecting the sources of the funds used to obtain them, but also he could not identify any of the banks from which he obtained the checks. Asked by respondent's counsel and the Court at least eight different times to name the banks, or even one bank, from which he obtained cashier's checks to buy the Swiss coins, he testified repeatedly that he could *86 not remember. The most specific location given for a bank where he allegedly purchased cashier's checks was Canada, where he said that he bought checks while on vacation. Petitioner further testified that he could not remember the name of the dealer in Zurich from whom he purchased the coins, stating only that "[i]t's one of those German names" and that, he believed, the dealer is no longer in business. He stated that he paid for the coins over 2 years, preferring to leave them in "storage" in Switzerland because he did not have storage at home.When asked about the risk inherent in leaving gold coins in a building of unknown ownership--not a bank in Zurich--for 2 years with only a receipt in his possession, petitioner replied that "[t]hey are a very reputable company." Such failure or refusal to give testimony on the details of the Swiss coins transaction permits the inference that those details would be detrimental to petitioner's case. See, e.g., Wichita Term. El. Co. v. Commissioner,162 F.2d 513 (10th Cir. 1947), affg. 6 T.C. 1158 (1946); Bresler v. Commissioner,65 T.C. 182, 188 (1975). Petitioner argues that there was *87 no reason for him to retain records of the coin dealings, because he had no intention of selling the coins; he expected rather to give them to his children, in values low enough to pass each year without gift tax. Because no tax would be due, he concludes, he had no reason to keep records on the purchase of the coins. Petitioner overlooks that his duty is to keep "permanent" records of his income, sec. 1.6001-1(a), Income Tax Regs., and that the statute specifically authorizes an examination of such records "for the purpose of ascertaining the correctness" of his return, sec. 7602. The records needed in the instant case are those which, if they exist, would disclose that the funds used to buy the gold coins were derived from moneys on which petitioner has paid an income tax. The fact, if true, that such moneys had been taxed might have been shown by establishing that petitioner received the cashier's checks used to buy the gold coins by drawing on accounts in which he deposited his taxed earnings. His failure or refusal to disclose the source of the cashier's checks casts such great doubts on the accuracy of his vague and conclusory testimony on such source that we cannot accept *88 it as a basis for a finding sustaining his position. Petitioner argues strenuously that respondent bears the burden of proof concerning the taxability of the Swiss coins, relying on Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977). The reliance is misplaced. In Weimerskirch v. Commissioner,supra, the Ninth Circuit held, in a case involving alleged dealings in narcotics, that the Commissioner may not rely entirely upon the prima facie correctness of his determinations and that, in the absence of a minimal evidentiary foundation linking the taxpayer to sales or income from an illegal activity, the Commissioner's determination may not stand. Even assuming arguendo that Weimerskirch is applicable in a case which does not involve a determination of income from illegal sources, respondent has clearly linked petitioner with the unexplained receipt of property in the form of the gold coins. Petitioner himself admits that he received the Swiss coins. Respondent's determination, rationally based upon petitioner's conceded receipt of the coins, placed upon petitioner the burden of making a *89 reasonable and credible explanation as to why the property was not taxable income, such as by showing the source of funds used to acquire the Swiss coins or their nontaxable nature. Cf. O'Dwyer v. Commissioner,266 F.2d 575, 588 (4th Cir. 1959), affg. 28 T.C. 698 (1957). Upon an examination of the entire record, we find petitioner's assertions, supported by no corroboration or documentation of any kind, to be wholly insufficient to carry his burden of proof on this issue. 2. Gold Krugerrands
In contrast to his vague testimony on the Swiss coins issue, petitioner gave fuller and more detailed testimony concerning the use of the krugerrands in his dental practice.He described how and why he acquired the krugerrands, as well as his technique in using them. He provided documentation showing the ordering of the coins and Jeneric's advertisement of krugerrands for use by dentists in the manner described by petitioner. Respondent did nothing to undermine petitioner's testimony on this issue. His main argument on brief is that, since petitioner collected coins as a hobby, he was "in a somewhat unique situation" of being able to use the krugerrands *90 in his hobby or his business; on this theory, respondent asserts, petitioner should bear a "greater than usual burden" of proof. Based on the evidence in the record, we find that the cost of this gold was an ordinary and necessary expense, within the meaning of section 162(a), [4] in petitioner's business as a dentist. The fact that petitioner collects coins as a hobby may arouse suspicion, but he testified that the krugerrands were not numismatic coins, a general statement that respondent himself has accepted in other contexts.See Rev. Rul. 79-143, 1979-1 C.B. 264; Rev. Rul. 82-166, 1982-40 I.R.B. 8. The inherent investment value of these coins may further raise suspicion. Vague suspicion, however, is not sufficient to undermine petitioner's detailed testimony on this issue. Respondent's cross-examination did not expose any true inconsistencies in petitioner's testimony regarding the krugerrands. In the light of petitioner's detailed *91 testimony on this issue, corroborated with documents, we would not be justified in disregarding it on the grounds of mere suspicion. On brief, respondent argues for the first time, alternatively, that even if the gold was used for business purposes, only a portion of the expenditure may be deductible in 1977. He cites section 1.461-1(a)(1), Income Tax Regs., which sets forth an exception to the general rule that for cash basis taxpayers, expenses are deductible in the taxable year in which paid; the regulation provides in part as follows: If an expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year, such an expenditure may not be deductible, or may be deductible only in part, for the taxable year in which made. * * * This same regulation, however, also provides that, in a going business there are certain deductions that overlap from one year to another; if these overlapping items "do not materially distort income, they may be included in the years in which the taxpayer consistently takes them into account." Section 1.461-1(a)(3)(i), Income Tax Regs.
This alternative argument comes too late. It *92 is not properly before the Court. See Schuster's Express, Inc. v. Commissioner,66 T.C. 588, 593 (1976), affd. 562 F.2d 39 (2d Cir. 1977), and cases cited. Had petitioner known this argument would be made, he could have shown the quantity of gold used in his business in each year and how long the supply he bought in December 1977 was reasonably expected to last. To deny the deduction on this ground at this point would be unfair to him. Although this gold expense was paid near the end of 1977, we think, in the circumstances, it must be treated as an overlapping business expense, the deduction of which in 1977 does not materially distort income. 3. Negligence
Section 6653(a) [5] permits an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Petitioners argue that they did the best job they could in preparing their tax returns and signed them under penalty of perjury. We are not convinced. Petitioners failed to include a large amount of income in 1977, $43,068 in Swiss coins and $305 in bank deposits. They made no credible explanations of either omission, and provided not even *93 the most rudimentary form of documentation. See sec. 6001 and sec. 1.6001-1(a), Income Tax Regs. Petitioners bear the burden of proof on this issue, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), and we hold that they have failed to sustain it.
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. All "Rules" references are to the Tax Court's Rules of Practice and Procedure.↩
2. In his opening statement at trial, respondent said that, of the five items set forth in the notice of deficiency, he conceded two entirely (the Keogh plan deduction and the lab fees deduction), and a third in part (the dental supplies expense, excluding the $3,068 spent to purchase gold krugerrands). The item of additional taxable income in the amount of $43,373 explicitly remained an issue. This $43,373 total includes Swiss coins with a value of $43,068 plus $305 in unexplained bank deposits. Petitioners presented no evidence concerning the latter issue at trial. They assert on brief that this item was "identified as tax exempt" in a pretrial conference; respondent asserts on brief that the item remains in issue. Because we have no concession by respondent on this item, we must conclude that it is still in issue; and because petitioners have failed to carry their burden of proving error in respondent's determination, Welch v. Helvering,290 U.S. 111↩ (1933); Rule 142(a), we sustain respondent's determination that petitioner received $305 in additional taxable income in 1977.
3. Coins classified as "BU" are in "bright uncirculated" condition which, for numismatic purposes, is of high quality.↩
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *↩
5. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩